[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 50 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 51 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 52 
OPINION
 INTRODUCTION
R.M. appeals jurisdictional and dispositional orders in which the trial court found that R.M.'s children were children described by Welfare and Institutions Code[1] section 300, subdivision (d) or (j), and removed the children from parental custody under section 361.5, subdivision (c).
We conclude that there is substantial evidence to support the trial court's findings that R.M.'s husband, George R., Sr., [2]
sexually abused R.M.'s two oldest daughters, Guadalupe R. and Maria R., within the meaning of section 300, subdivision (d), and that R.M.'s daughter, Kelly R., was at substantial risk of being sexually abused within the meaning of section 300, subdivision (j). We further conclude that there is substantial evidence to support the trial court's findings that returning Guadalupe, Maria and Kelly to the home would pose a substantial danger to their physical health, safety or well-being, and that there were no reasonable means to protect their physical health without removing them from the home. (§ 361, subd. (c)(1).)
With respect to R.M.'s son, George R., Jr., we conclude that there is not substantial evidence to support the trial court's finding that he was at substantial risk of beingsexually abused under section 300, subdivision (j), as that phrase is defined in section 300, subdivision (d). Section 300, subdivision (d) specifically defines "sexual abuse" by reference to the Penal Code. *Page 53 
However, we further conclude that section 300, subdivision (j), does not limit the grounds of dependency adjudication for a child whose sibling has been abused to the same subdivision of section 300 that applies to that sibling. Rather, the plain language of section 300, subdivision (j), directs the trial court to consider whether there is a substantial risk that the subject child will be abused or neglected, as defined in section 300, subdivision (a), (b), (d), (e), or (i).
Because our interpretation of section 300, subdivision (j), expands the grounds on which some reviewing courts have previously approved taking jurisdiction of a child in George, Jr.'s position, and at the same time, limits the application of section 300, subdivision (d) as applied through subdivision (j), we conclude that we should remand the matter as to George, Jr., in order to allow the San Diego County Health and Human Services Agency the opportunity to assess any harm that George, Jr., may have suffered, or any risk to him that may exist, in the family home under section 300, and to amend the petition, if so indicated.
 FACTUAL AND PROCEDURAL BACKGROUND
R.M. and George R., Sr. (George or father), are the married parents of three daughters and one son: Guadalupe, Maria, Kelly, and George, Jr. (collectively, the children). The children are currently 14, 12, 10 and 8 years old, respectively. In addition to these children, George has three adult children from his first marriage — two daughters, Kristina and Amy, who testified in these proceedings, and a son.
On June 5, 2009, the San Diego County Health and Human Services Agency (the Agency) detained the children in protective custody after Guadalupe told a school counselor that George had sexually abused her, and said that he had been abusing her for at least five years. When Maria was interviewed shortly after Guadalupe's disclosure, she told a social worker that George had touched her on her private parts, but said that he had not done so for a long time.
Kelly denied that she had been sexually abused.
George, Jr., denied that anyone had ever touched him inappropriately. The Agency did not obtain any other evaluation or assessment of George, Jr.
When the Agency informed R.M. of Guadalupe's and Maria's (together, the girls) allegations of sexual abuse, R.M. said that they were lying. R.M. believed that Guadalupe had made up the story, on the advice of her friends, *Page 54 
in order to avoid incurring consequences for her defiant behaviors, which had been increasing throughout the school year.
The Agency encouraged R.M. to participate in services designed to teach nonprotecting parents of sexually abused children how to protect their children from further abuse. However, R.M. refused to cooperate with the Agency. In addition to refusing to participate in services, R.M. engaged in inappropriate discussions with the children concerning the details of the case, and repeatedly told the children that George loved them. R.M. also gave the children gifts from George, despite the fact that the court had issued a restraining order prohibiting George from having either direct or indirect contact with the children. All of the children told the social worker that they wanted to return home to live together with their mother.
In August 2009, George's adult daughters, Kristina and Amy, who had never met the children, learned of the dependency proceedings and contacted the Agency. Amy reported that George had sexually molested her over a period of nine years, beginning when she was five years old, and said that the abuse stopped only when her parents separated. Amy was concerned about the children's welfare because, according to Amy, George could be aggressive and angry, and he knew how to manipulate people.
Kristina reported that she had witnessed George sexually abuse Amy when she and Amy were young. Kristina asserted that George had sexually abused other victims, including one of their cousins, their friends, and others who were developmentally delayed. When Kristina told George that she did not respect him because he abused children, George hit her in the face, splitting her lip. According to Kristina, during a recent telephone conversation, George told her that he had convinced the children to recant their allegations of sexual abuse, and said that he had instructed Kelly to say that Guadalupe had fabricated the allegations because George would not allow Guadalupe to have a boyfriend.
The contested jurisdiction and disposition hearing was held on September 4, 2009. In reports that were admitted in evidence, the Agency stated that when Guadalupe first disclosed the sexual abuse, she initially told the school counselor that there was "a girl who has a dad who comes into her bed at night." Guadalupe then admitted that she was talking about her father. Guadalupe told the counselor that her father would come into her bed at night and touch her "private parts." He put his hands under her clothing, and she could feel his penis against her. She would pretend to be asleep while her father was touching her. Guadalupe reported that her father had been engaging in this type of behavior since she was five years old. She stated that the *Page 55 
molestation had "always happened" and that she did not know whether her father's behavior was normal.[3]
The social worker interviewed Maria and asked her whether either parent had ever made her do anything that she did not want to do. Maria began to cry. The social worker then asked Maria whether anyone had ever touched her private parts. Maria cried for approximately five minutes and then said, "[Y]es . . . my dad would touch me." She immediately added, "but not anymore, not for a long time." Maria was crying and trembling when she disclosed the molestation.
Forensic interviews of Guadalupe, Maria and Kelly were conducted six days after Guadalupe and Maria made their initial disclosures. Guadalupe rebuffed the interviewer. She said that the interviewer already knew what had happened, and that if the interviewer wanted additional details, the interviewer could ask the school counselor, the social worker or the law enforcement officer. Maria refused to answer any questions. Kelly denied having been abused by her father and stated that Guadalupe had fabricated the allegations because Guadalupe did not want to go to boot camp.
During later forensic interviews, Maria retracted her allegation that her father had sexually molested her, and instead maintained that her father had not touched her on her private parts. Maria said that she believed Guadalupe had made up the allegations about their father because he would not allow Guadalupe to see her boyfriend. During these later interviews, Guadalupe refused to answer questions about her father's sexual abuse.
Kristina testified that she is two years older than Amy. During the summer between seventh and eighth grades, she observed George approach Amy from behind. He bent down and started rubbing his genitalia against Amy while fondling her breasts. According to Kristina, George was wearing "insanely short shorts" at the time, and was not wearing underwear. His penis was visible. Amy was able to get away from him.
Kristina said that she could not recall other specific incidents of George sexually abusing Amy, but remembered that George was always putting his hands on or near Amy's breasts, pulling her toward him, and making her sit on his lap. Kristina recalled that George's abuse of Amy began when Amy was approximately seven years old and continued until Amy was 13 or 14. Kristina testified that George had admitted to Kristina, Amy and their mother that he had sexually abused Amy. *Page 56 
Kristina did not have any specific memory of having been sexually abused as a child. However, she believed that George had sexually abused her, as well, because of certain emotional reactions that she recalled having when she was five years old, and also because of the vulnerability that she had felt throughout her adult life.
Amy testified that throughout her childhood, George would rub himself against her rear, make her sit on his lap, touch her breasts, and put his hands in her pants. She recalled a specific event that occurred when she was nine years old. On that occasion, George took her to an amusement park. On the drive home, he insisted that Amy sit in the front seat with him. When Amy became sleepy, George told her to lay her head in his lap for comfort. He then reached over and fondled her private parts.
Amy testified that the last incident of sexual abuse occurred when she was 13 or 14 years old. On that occasion, George pushed Amy down onto the bed. He put his mouth on her breasts, pulled her pants down, and then put his mouth on her "woman private area." When Amy told George to stop, he replied that Amy was "being silly" and that she "needed to relax."
Amy testified that her cousin had disclosed that George had inappropriately touched her, too. According to Amy, when the cousin's parents learned of the abuse, there was "a big scene."
Guadalupe testified that she had told the truth when she informed the school counselor, the police officer, and the social worker that George had abused her. Guadalupe said that George had touched her in a way that she did not want to be touched. She stated that R.M. did not care about her and did not pay attention to her.
Maria said that she had never seen her father touch Guadalupe inappropriately. Maria also said that she did not believe Guadalupe's account of having been sexually molested by their father because their father was "really nice," and would buy her whatever she wanted.
R.M. testified that after listening to all of the testimony presented at the hearing, she still did not believe that George had sexually molested any of his daughters.
The social worker testified that, in her view, R.M.'s lack of insight presented a risk to the children's safety and well-being.
At the conclusion of the hearing, the trial court commented that Guadalupe had an "attitude," but found that she was a classic victim of sexual molestation. With respect to Maria, the court stated that she presented as a fragile, *Page 57 
fearful girl who would say anything to be allowed to return home. The court determined that Maria's disclosures to the social worker that her father had sexually molested her were credible. The court further found Amy and Kristina to be credible witnesses, and concluded that George had molested Guadalupe and Maria in the same manner in which he had previously molested his adult daughters.
The trial court found that Guadalupe and Maria had been sexually abused within the meaning of section 300, subdivision (d), and that Kelly and George, Jr., were "at substantial risk of being sexually abused by the father" within the meaning of section 300, subdivision (j). The court noted that R.M. had resisted the court's orders since the beginning of the dependency proceedings, and found that removal of the children from parental custody was necessary to protect them from further harm. (§ 361.5, subd. (c).)
 DISCUSSION I JURISDICTION A The Parties' Contentions
R.M. contends that there was insufficient evidence for the trial court to assume jurisdiction of the children under section 300, subdivisions (d) and (j). She maintains that Guadalupe's and Maria's reports of sexual abuse by their father do not constitute substantial evidence that they were in fact sexually abused because Guadalupe had a motive to lie, and Maria recanted her allegations. R.M. also asserts that there is no evidence to support a finding that she knew, or had reason to know, that George was sexually abusing Guadalupe and Maria, and that this court should therefore reverse the jurisdictional finding under section 300, [4] subdivision (d), as it applies to her.
We review the trial court's findings to determine whether there is substantial evidence to support them. We do not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts. The appellant has the burden of showing that there is no evidence of a sufficiently substantial nature to support the finding or order. (In re Dakota H.
(2005) 132 Cal.App.4th 212, 228 [33 Cal.Rptr.3d 337].) *Page 58 
 B Guadalupe and Maria
The juvenile court found that Guadalupe and Maria were described by section 300, subdivision (d). Section 300 provides, in part, that:
"Any child who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge that person to be a dependent child of the court: [¶] . . . [¶]
"(d) The child has been sexually abused, or there is a substantial risk that the child will be sexually abused, as defined in Section 11165.1 of the Penal Code, by his or her parent or guardian or a member of his or her household, or the parent or guardian has failed to adequately protect the child from sexual abuse when the parent or guardian knew or reasonably should have known that the child was in danger of sexual abuse."
Penal Code section 11165.1 defines sexual abuse to mean sexual assault or sexual exploitation as defined by the following:
"(a) `Sexual assault' means conduct in violation of one or more of the following sections: . . . paragraph (1) of subdivision (c) of Section 288[5] (lewd or lascivious acts upon a child), 288a (oral copulation), . . . or 647.6[6] (child molestation).
"(b) Conduct described as `sexual assault' includes, but is not limited to, all of the following: [¶] . . . [¶]
"(2) Any sexual contact between the genitals or anal opening of one person and the mouth or tongue of another person. [¶] . . . [¶]
"(4) The intentional touching of the genitals or intimate parts (including the breasts, genital area, groin, inner thighs, and buttocks) or the clothing *Page 59 
covering them, of a child, or of the perpetrator by a child, for purposes of sexual arousal or gratification, except that, it does not include acts which may reasonably be construed to be normal caretaker responsibilities; interactions with, or demonstrations of affection for, the child; or acts performed for a valid medical purpose.
"(5) The intentional masturbation of the perpetrator's genitals in the presence of a child." (Pen. Code, § 11165.1.)
 1. There Is Substantial Evidence to Support the Findings That George Sexually Abused Guadalupe and Maria
Guadalupe's and Maria's initial statements to the social worker are sufficient to sustain the petition alleging that their father sexually abused them within the meaning of section 300, subdivision (d). Guadalupe reported that George came into her bed at night on numerous occasions, touched her vaginal area with his hand under her clothing, and rubbed his penis against her. This conduct clearly constitutes sexual assault of a child within the meaning of subdivision (d).
With respect to Maria, in her initial interview with the social worker, Maria reported that George had touched her vaginal area. Amy's and Kristina's testimonies support a finding that George has engaged in a pattern of sexually assaulting his daughters over a period of more than 20 years. Based on Maria's initial disclosure of sexual molestation and George's history of sexually assaulting his other daughters, the court could reasonably have found, by clear and convincing evidence, that George sexually abused Maria within the meaning of section 300, subdivision (d).
The trial court did not find credible Maria's later assertion that she had made up the allegation of sexual molestation. This conclusion is fully supported by the record. Maria's initial account of George's sexual abuse of her was consistent with Guadalupe's, Amy's and Kristina's accounts. In addition, Maria disclosed George's sexual abuse of her to the social workerbefore Maria knew that Guadalupe had disclosed that George had sexually abused her. Further, the record reflects that Maria was under pressure to retract her initial allegation of sexual abuse. R.M. repeatedly told the girls that George loved them very much and said that he would buy them anything they wanted. When the social worker asked Maria where she would like to live during the proceedings, other than with her mother, Maria said that she "just . . . want[ed] to go back home to her mother." *Page 60 
 2. There Is Substantial Evidence to Support the Finding That R.M. Failed to Protect Guadalupe and Maria
R.M. contends that the record does not support a finding that she failed to adequately protect Guadalupe and Maria. R.M. asserts that she did not know, and that she could not reasonably have known, that the girls were in danger of being sexually abused. (§ 300, subd. (d).) Because there is substantial evidence to support a finding under subdivision (d) based on George's sexual abuse of Guadalupe and Maria, alone, even if we found R.M.'s contention to be persuasive, the fact that she did not fail to protect her children from sexual abuse would not affect the girls' status as dependents of the juvenile court, since the acts or omissions of either parent may bring the child within section 300. (In re Alysha S. (1996)51 Cal.App.4th 393, 397 [58 Cal.Rptr.2d 494]; see In re JohnS. (2001) 88 Cal.App.4th 1140, 1141 [106 Cal.Rptr.2d 476].) However, because R.M.'s claim that she was a protective parent is relevant to other issues that she raises in her appeal, we will address this contention.
The record supports a finding that R.M. knew, or reasonably should have known, that Guadalupe and Maria were in danger of being sexually abused, and that she failed to protect them. George's abuse of Guadalupe had been ongoing for as long as Guadalupe could remember. The school counselor reported that the girls dressed provocatively at school, and said that George had bragged about taking his daughters to the mall to shop for clothes. In addition, R.M. testified that she asked her daughters every week whether they had been sexually abused by their father or by any other person. If true, this suggests that, despite her protestations to the contrary, R.M. was in fact suspicious that her daughters may have been subjected to sexual abuse.
In determining whether the children would be at risk from parental abuse or neglect, the court considers the circumstances at the time of the jurisdictional hearing. (In re SavannahM. (2005) 131 Cal.App.4th 1387 [32 Cal.Rptr.3d 526]; Inre Carlos T. (2009) 174 Cal.App.4th 795, 805-806
[94 Cal.Rptr.3d 635].) The record clearly shows that shortly before the children were detained, R.M. knew that both Guadalupe and Maria had reported that George had sexually abused them. Rather than protect the girls, R.M. denied that any abuse had occurred and maintained that the girls were lying. In addition, R.M. refused to cooperate with the Agency. Instead of participating in services, R.M. embarked on a path that appears to have been designed to persuade the girls to retract their statements, including violating a restraining order that prohibited George from having direct or indirect contact with the children. The trial court stated that, in its view, R.M. would never accept the fact that George had sexually abused Guadalupe and Maria, and commented *Page 61 
that R.M. would not have believed the girls even if R.M. had witnessed the abuse first hand.
The record clearly establishes that R.M. was not a protective parent. Instead of attempting to protect her children, R.M. sought to protect her husband — the perpetrator of the abuse. Based on R.M.'s denials that the girls had been sexually abused and her refusal to cooperate with the Agency, the trial court could reasonably have found that R.M. failed to protect Guadalupe and Maria from sexual abuse. (§ 300, subd. (d);In re Carlos T., supra, 174 Cal.App.4th at p. 806.)
 C Kelly and George, Jr.
The court detained both Kelly and George, Jr., under section 300, subdivision (j). That subdivision applies when: "The child's sibling has been abused or neglected, as defined in subdivision (a), (b), (d), (e), or (i), and there is a substantial risk that the child will be abused or neglected, as defined in those subdivisions."[7] The court specifically found that Kelly and George, Jr., were at substantial risk of being sexually abused under subdivision (j). In making this finding, the court necessarily found that Kelly and George, Jr., were at risk of being sexually abused as defined in section300, subdivision (d).
 1. Kelly
The trial court found that George had sexually abused Guadalupe, Maria, Amy and Kristina. The record shows that George has a 25-year history of sexually abusing his daughters. George abused Guadalupe, Maria, and Amy when they were the same age that Kelly is now. George called Kelly by the same nickname — "Weasel" — that he had given Amy. Ten-year-old Kelly frequently slept with her parents in their bed. According to Kristina, George told her that Kelly had also said that he had touched her, and had stated that "kids don't remember things that happen to them when they're 5 or 6, or 8 or 9."
The trial court could reasonably have concluded that George's history of sexually abusing his daughters, together with R.M.'s failure to protect her children, placed Kelly at risk of sexual abuse. In addition, the record establishes that Kelly was susceptible to pressure from her parents not to *Page 62 
disclose any information that might be adverse to the parents' interests. The court found it necessary to suspend R.M.'s and George's visitation with Kelly to prevent the parents from engaging in any further discussion about the details of the case with her. These facts permit the reasonable inference that Kelly might conceal the truth if her father were to attempt to have inappropriate sexual contact with her, and that her mother would tacitly, if not expressly, approve such concealment. We conclude that the record contains substantial evidence to sustain a finding that Kelly was at substantial risk of abuse or neglect within the meaning of section 300, subdivision (j), as defined in section 300, subdivision (d).
 2. George, Jr.
R.M. contends that there is not substantial evidence to support the trial court's finding under section 300, subdivision (j) that George, Jr., was at substantial risk of sexual abuse. Specifically, R.M. argues that even if the evidence supports a finding that George sexually abused Guadalupe and Maria, that fact does not establish that George, Jr. — an eight-year-old boy — is at risk of being sexually abused, as defined in section 300, subdivision (d) and Penal Code section 11165.1. In arguing that George, Jr., is not at risk of sexual abuse, R.M. suggests that subdivision (j) limits the parameters of adjudication of a child in George, Jr.'s position to the same subdivision under which the child's sibling is, or has been, adjudicated a dependent of the juvenile court.
In response, the Agency asserts that George, Jr., was at substantial risk of sexual abuse because he was approaching the age at which George's sexual abuse of Guadalupe and Maria began, and because George's behavior with his daughters was sexually aberrant. The Agency maintains that a court may conclude, in the absence of any supporting evidence, that a male child is at substantial risk of being sexually abused by a parent who has sexually abused that child's sisters. In support of its position, the Agency relies solely on case law in which courts have asserted that a father's sexual abuse of his daughter places a son of the same age at risk of sexual abuse. (In reKaren R. (2001) 95 Cal.App.4th 84, 90-91
[115 Cal.Rptr.2d 18] (Karen R.); In re P.A. (2006) 144 Cal.App.4th 1339,1347 [51 Cal.Rptr.3d 448] (P.A.).)
We do not interpret section 300, subdivision (j) as narrowly as does appellant, nor do we view the statutory definition of "sexual abuse" as expansively as does respondent. Rather, based on the plain language of section 300, we conclude that subdivision (j) permits the adjudication of a child whose sibling has been determined to have been sexually abused under section 300, subdivision (d), if the court finds that there is a substantial risk that the child will be abused or *Page 63 
neglected, as defined in subdivision (a), (b), (d), (e),or (i) of section 300. Thus, the basis for taking jurisdiction of George, Jr., under subdivision (j) is not limited to a risk of sexual abuse, as that term is defined by subdivision (d) and Penal Code section 11165.1. Further, we disagree with prior cases to the extent that they have held, either explicitly or implicitly, that a parent's sexual abuse of a daughter, either alone or in combination with a factor or factors that have no established correlation with sexual abuse, is sufficient to establish that the parent's son is at risk of sexual abuse by that parent within the meaning of subdivision (d).
 a. The Scope of Section 300, Subdivision (j)
The purpose of the dependency system "is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, andphysical and emotional well-being of children who are at riskof that harm." (§ 300.2, italics added.) "When a parent abuses his or her own child, or permits such abuse to occur in the household, the parent also abandons and contravenes the parental role. Such misparenting is among the specific compelling circumstances which may justify state intervention, including an interruption of parental custody." (In reKieshia E. (1993) 6 Cal.4th 68, 77 [23 Cal.Rptr.2d 775,859 P.2d 1290].)
Section 300, subdivision (j) applies to a child whose sibling has been abused or neglected as defined in subdivision (a) (serious physical harm), (b) (inadequate care), (d) (sexual abuse), (e) (severe physical abuse) or (i) (act of cruelty) of section 300. (In re Ricardo L. (2003)109 Cal.App.4th 552, 566 [135 Cal.Rptr.2d 72]; In re Joshua J. (1995)39 Cal.App.4th 984, 992 [46 Cal.Rptr.2d 491] (JoshuaJ.).) Some courts have acknowledged that subdivision (j) lists several subdivisions, but they appear to have proceeded on the assumption that an adjudication of the child whose sibling has been sexually abused must be made pursuant to subdivision (d). (In re Rubisela E. (2000) 85 Cal.App.4th 177
[101 Cal.Rptr.2d 760] (Rubisela E.); In re Ricardo L.,supra, 109 Cal.App.4th 552.) Other courts that have reviewed whether a child is at risk of sexual abuse under subdivision (j) have not mentioned that subdivision (j) refers to multiple subdivisions, and have proceeded only on the basis of subdivision (d). (In re Jason L. (1990)222 Cal.App.3d 1206, 1215 [272 Cal.Rptr. 316]; In re AndyG. (2010) 183 Cal.App.4th 1405 [107 Cal.Rptr.3d 923] (Andy G.).) However, subdivision (j) states that the trial court is to consider whether "there is a substantial risk that the child [whose sibling has been abused] will be abused or neglected, as defined in those subdivisions." (§ 300, subd. (j), italics added; see Fitch v. SelectProducts Co. (2005) 36 Cal.4th 812, 818 *Page 64 
[31 Cal.Rptr.3d 591, 115 P.3d 1233] [the statutory language is generally the most reliable indicator of legislative intent].)
In our view, section 300, subdivision (j) was intended to expand the grounds for the exercise of jurisdiction as to children whose sibling has been abused or neglected as defined in section 300, subdivision (a), (b), (d), (e), or (i). Subdivision (j)does not state that its application is limited to the risk that the child will be abused or neglected as definedin the same subdivision that describes the abuse or neglect of the sibling. Rather, subdivision (j) directs the trial court to consider whether there is a substantial risk that the child will be harmed under subdivision (a), (b), (d), (e) or
(i) of section 300, notwithstanding which of those subdivisions describes the child's sibling. Further, subdivision (j) contains a specific legislative directive to trial courts to consider multiple factors, including "the circumstances surrounding the abuse or neglect of the sibling, the age and gender of each child, the nature of the abuse or neglect of the sibling, the mental condition of the parent or guardian, and any other factors the court considers probative in determining whether there is a substantial risk to the child." This language supports our interpretation of the statute. (§ 300, subd. (j); see Joshua J., supra, 39 Cal.App.4th at p. 994.) The "nature of the abuse or neglect of the sibling" is only one of many factors that the court is to consider in assessing whether the child is at risk of abuse or neglect in the family home. Subdivision (j) thus allows the court to take into consideration factors that might not be determinative if the court were adjudicating a petition filed directly under one of those subdivisions.
The broad language of section 300, subdivision (j) clearly indicates that the trial court is to consider the totality of the circumstances of the child and his or her sibling in determining whether the child is at substantial risk of harm, within the meaning of any of the subdivisions enumerated in subdivision (j). The provision thus accords the trial court greater latitude to exercise jurisdiction as to a child whose sibling has been found to have been abused than it would have in the absence of that circumstance. Further, limiting the application of subdivision (j) to the same ground found to apply to the child's sibling would render subdivision (j) superfluous or redundant, since the petition as to the child could simply be filed under the applicable subdivision or subdivisions.[8]
Our interpretation of this provision comports with the established rule of statutory construction that a reviewing court is to avoid construing a statute in a manner that would render parts of the statute surplusage. (Eisner v. Uveges *Page 65 
(2004) 34 Cal.4th 915, 931 [22 Cal.Rptr.3d 530, 102 P.3d 915]; see also State Farm Mutual Automobile Ins. Co. v.Garamendi (2004) 32 Cal.4th 1029, 1043 [12 Cal.Rptr.3d 343,88 P.3d 71] [statute is read with reference to the entire scheme of law of which it is a part].) Construction that makes sense of an apparent statutory ambiguity is preferable to one that renders statutory language useless or meaningless. (HartfordFire Ins. Co. v. Macri (1992) 4 Cal.4th 318, 326
[14 Cal.Rptr.2d 813, 842 P.2d 112].) Our interpretation is also in keeping with the purpose of the dependency system, which is to provide maximum safety and protection for children who are being abused, neglected or exploited, and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm. (§ 300.2.)
We conclude that where, as here, a child's sibling has been sexually abused by a parent, section 300, subdivision (j) allows the court to assume jurisdiction of the child if, after considering the totality of the child's circumstances, the court finds that there is a substantial risk to the child in the family home, under any
subdivision enumerated in subdivision (j), taking into consideration the totality of the child's and sibling's circumstances.[9]
 b. The Risk of Sexual Abuse to a Child Whose Sibling Has Been Sexually Abused
Some appellate courts have effectively expanded the statutory definition of "sexual abuse" by stating or implying that a child may be found to be at substantial risk of sexual abuse
within the meaning of section 300, subdivision (d) based on emotional or "other harm" to that child caused by sexual abuse occurring in the household, the disclosure of sexual abuse within the child's family, or by inadvertently witnessing an abusive act on a sibling. (See P.A., supra,144 Cal.App.4th at pp. 1346-1347; Karen R., supra,95 Cal.App.4th at pp. 89-90.) Other courts have held that when a child has been sexually abused, the court may conclude, on the basis of this fact, alone, that younger siblings are also at risk of sexual abuse. (Andy G., supra,183 Cal.App.4th at p. 1414; P.A., supra, at p. 1347.)
In Rubisela E., supra, 85 Cal.App.4th 177, the reviewing court determined that there was not substantial evidence to sustain the trial court's findings that the brothers of a girl who had been sexually abused were at substantial risk of sexual abuse. (Id. at pp. 197-198.) In language that has subsequently been *Page 66 
widely quoted, the Rubisela E. court explained: "We do not discount the real possibility that brothers of molested sisters can be molested . . . or in other ways harmed by the fact of the molestation within the family. Brothers can be harmed by the knowledge that a parent has so abused the trust of their sister. They can even be harmed by the denial of the perpetrator, the spouse's acquiescence in the denial, or their parents' efforts to embrace them in a web of denial." (Id. at p. 198, citation omitted.) Because there had been no showing that the brothers were at substantial risk of abuse or neglect "`as defined in [the applicable] subdivisions'" (id. at p. 199, quoting § 300, subd. (j)), the court concluded that it had no choice but to reverse the jurisdictional order as to the brothers. (85 Cal.App.4th at p. 199.)
While the Rubisela E. court did not state that sufficient evidence of "other harm" would constitute "sexual abuse" as defined in section 300, subdivision (d), other courts appear to have read Rubisela E. to imply that any "other harm" that might emanate from the sexual abuse of a sibling brings the subject child within the definition of "sexual abuse" under section 300, subdivision (j), as defined in subdivision (d). In Karen R., supra, 95 Cal.App.4th at pages 89-90, in addressing whether a parent's aberrant sexual conduct toward a sibling constitutes sexual abuse, or a substantial risk of sexual abuse, within the meaning of subdivision (d), as to another child in the family, the court construed Penal Code section 647.6 to include any act that might annoy, irritate or disturb a child who has inadvertently witnessed, or may witness, the sexual abuse of a sibling — despite the absence of any language in the statute that would permit this interpretation.[10]
In P.A., the same appellate court that had previously decided Karen R. discussed whether two brothers, who were not aware of their father's sexual abuse of their sister, were at substantial risk of sexual abuse within the meaning of section 300, subdivision (d). (P.A., supra,144 Cal.App.4th at pp. 1345-1346.) The only other risk that the social services agency had identified in the home was an "argumentative" relationship between the parents. (Id.
at p. 1343.) The P.A. court held that any child, regardless of gender, who is approaching the age at which his or her sibling was sexually *Page 67 
abused may be found to be at risk of sexual abuse under subdivision (d), reasoning that "aberrant sexual behavior by a parent places the victim's siblings who remain in the home at risk of aberrant sexual behavior." (P.A., supra, at p. 1347.)
In Andy G., supra, 183 Cal.App.4th 1405, the court rejected a father's contention that evidence that the father had sexually abused his daughters was insufficient to establish that his son, Andy G., was at risk of sexual abuse under section 300, subdivision (j), as defined in section 300, subdivision (d). The father maintained that since there was no evidence that the father had engaged in "`suspicious contact'" with Andy, or with "`any juvenile or adult male,'" the evidence did not support the allegation that Andy was at risk of sexual abuse. (Andy G., at p. 1411.) The Andy G. court upheld the trial court's finding that Andy was at risk of sexual abuse in the family home, [11] agreeing with the P.A.
court's assertion that "`aberrant sexual behavior by a parent places the victim's siblings who remain in the home at risk of aberrant sexual behavior.'"[12] (Andy G., supra, at p. 1414, quoting P.A., supra, 144 Cal.App.4th at p. 1347.)
 c. In Proceedings Alleging That a Child Is at Risk of Sexual Abuse Under Section 300, Courts Must Adhere to the Statutory Definition of the Phrase "Sexual Abuse"
While we agree with the Rubisela E. court's observation that the brothers of molested girls may be harmed by the fact of molestation occurring in the family, we cannot agree with prior cases to the extent that they have held or implied that the risk that the brothers face may — in the absence of evidence demonstrating that the perpetrator of the abuse may have an interest in sexually abusing male children — be deemed to be one of "sexual abuse" within the meaning of section 300, subdivision (d). As we have discussed, the phrase "sexual abuse" for purposes of section 300 is defined by reference to the offenses enumerated in Penal Code section 11165.1, whether the allegation of sexual abuse is filed under section 300, subdivision (d) or (j). (See, ante, at pp. 58-59 
fns. 5 6.) Penal Code section 11165.1 refers to specific sex acts committed by the perpetrator on a victim, including child molestation under Penal Code section 647.6, anddoes not include in its enumerated *Page 68 
offenses the collateral damage on a child that might result from the family's or child's reaction to a sexual assault on the child's sibling.
In expanding the definition of "sexual abuse" to authorize the exercise of jurisdiction as to a child whose sibling has been sexually abused, courts have undoubtedly acted pursuant to the commonsense notion that any child who is residing with a parent or other adult who has sexually abused the child's sibling, and/or a parent who has minimized the sexual abuse of the child's sibling, is living in a dysfunctional and potentially harmful environment. However, in holding that brothers of girls who have been sexually molested by a parent may, on that basis alone, be found to be at risk of sexual abuse, courts appear to have essentially disregarded the language in section 300, subdivision (j) that requires that there be a substantial risk of abuse or neglect, as defined in section 300, subdivision (a), (b), (d), (e) or (i), and/or the statutory language defining "sexual abuse" for purposes of subdivision (d). However, a reviewing court "may not, under the guise of construction, rewrite the law or give the words an effect different from the plain and direct import of the terms used." (California Fed. Savings Loan Assn. v. City of LosAngeles (1995) 11 Cal.4th 342, 349 [45 Cal.Rptr.2d 279,902 P.2d 297].')
In addition to the lack of support in the relevant statutory provisions for the proposition that a brother of a girl who has been sexually abused by a parent is at risk of sexual
abuse, there is a lack of evidentiary support for this general assertion in the case law, as well. None of the courts that has held or impliedly concluded that a child, regardless of gender, whose sibling was sexually abused, may be found to be at risk ofsexual abuse under section 300, subdivision (d), either directly or under section 300, subdivision (j), has cited any scientific authority or empirical evidence to support the conclusion that a person who sexually abuses a female child is likely to sexually abuse a male child. (See, e.g., P.A.,supra, 144 Cal.App.4th at p. 1347; Andy G., supra,183 Cal.App.4th at p. 1405.) In the absence of evidence demonstrating that a perpetrator of sexual abuse of a female child is in fact likely to sexually abuse a male child, we are not persuaded that the rule of general applicability enunciated in P.A., and repeated by the Andy G. court, is grounded in fact. For this reason, we decline to adopt the reasoning of P.A. and Andy G.
Since there is no evidence in the record that would tend to support a finding that George has an interest in engaging in sexual activity with a male child, we cannot, despite the Agency's urging, conclude that George's sexual abuse of his daughters — as aberrant as it is — establishes that George, Jr., is at substantial risk of sexual abuse
within the meaning of section 300, subdivision (j), as defined in section 300, subdivision (d) and Penal Code section 11165.1. However, that is not the end of the inquiry. *Page 69 
 d. Assessing Harm or Risk of Harm to George, Jr.
Given the findings that George sexually abused Guadalupe and Maria, and the parents' conduct, it may very well be that George, Jr., has suffered harm, or is at substantial risk of harm, in the family home. As we have discussed, there is more than ample evidence to sustain the finding that George committed acts of sexual abuse as defined in Penal Code section 11165.1
against Guadalupe and Maria. These findings constitute prima facie evidence that George, Jr., is a child described by section 300, subdivision (a), (b), (c) or (d) and that he is at substantial risk of abuse or neglect. (§ 355.1, subd. (d)(3).)
Further, there is ample evidence to support the trial court's finding that the home environment of the children is extremely dysfunctional, and poses a risk to their well-being. The record in this case shows that George is sexually abusive and manipulative, and that he has repeatedly acted in disregard of his children's physical safety and their emotional well-being. The testimony of George's adult daughters demonstrates that George can be violent and physically abusive, and that he behaves, at times, in an aggressive and angry manner. Further, in 2004, a neighbor reported seeing child pornography, specifically, photographs of children's genitalia, in the home.
The fact that R.M. is not a protective parent, and that she has shown no sign of wanting to ameliorate the situation, significantly increases the level of dysfunction in the home. R.M. has refused to participate in offered services. In addition, both she and George have tried to influence the children to make statements favorable to George to the extent that the trial court suspended George's and R.M.'s visitation in order to reduce the pressure on the children. R.M. encouraged the girls to disrupt their foster care placements by acting out. Further, while R.M. told the social worker that George was no longer residing with the family, there was evidence to the contrary, and R.M. would not tell the social worker where she was living. The parents' actions after the children's removal and prior to the jurisdiction hearing only increased the level of dysfunction in the family, and thus, the consequential harm or risk of harm to the children.
However, the only allegation that the Agency pursued in the juvenile court as to George, Jr., is that he was at risk of being sexually abused, and the limited information in the record pertaining to him shows only that he has denied having been inappropriately touched. The Agency did not seek to obtain a forensic interview of George, Jr., or have him evaluated or assessed by a psychologist for any other harm he may have suffered, or may be at risk of suffering, in the family home. *Page 70 
In view of the statutory presumption that George, Jr., is a child described by one or more subdivisions of section 300, and our interpretations of section 300, subdivisions (j) and (d), we conclude that the appropriate disposition as to George, Jr., is to remand with directions to the court to detain him in protective custody pursuant to section 319 and order the Agency to assess any harm that George, Jr., may have suffered, or any risk to him that may exist, under section 300. (§ 355.1, subd. (d)(3).)
 II SECTION 361, SUBDIVISION (c)
R.M. argues that the court may not remove a child from parental custody in the absence of evidence to support a finding that the child would be in imminent danger of abuse. She asserts that, by all reports, she had positive and loving relationships with her children. R.M. contends that the trial court did not consider reasonable alternatives to the removal of the children from her custody, such as ordering that George not be allowed into the home and providing intensive in-home services to the family.
A trial court may not remove a dependent child from the physical custody of the child's parent unless there is or would be a substantial danger to the child's physical health, safety, protection, or physical or emotional well-being if returned home, and there are no reasonable means to protect the child's physical health without removing the child from the home. (§ 361, subd. (c)(1); see § 361, subd. (c)(4);[13] In reHenry V. (2004) 119 Cal.App.4th 522, 528
[14 Cal.Rptr.3d 496]; In re Jasmine G. (2000) 82 Cal.App.4th 282, 288
[98 Cal.Rptr.2d 93].)
In determining whether a child may be safely maintained in the parent's physical custody, the court may consider the parent's past conduct and current circumstances, and the parent's response to the conditions that gave rise to juvenile court intervention. (In re Cole C. (2009)174 Cal.App.4th 900, 917 [95 Cal.Rptr.3d 62].) The court must also consider whether there are any reasonable protective measures and services that can be put into place to prevent the child's removal from the parent's physical custody. (§ 361, subd. (c)(1); see generally §§ 202, subd. (a), 16500.5, 16501, 16501.1; 42 U.S.C. §§ 629, 629a.) *Page 71 
Guadalupe and Maria had been sexually abused by George, and they could not look to R.M. for protection. R.M. was not empathetic to their needs, and despite overwhelming evidence, did not believe that George had sexually molested them, or that he might sexually abuse Kelly. The social worker testified that, in her view, R.M.'s lack of insight presented a risk to the children's safety and well-being.
R.M. refused to cooperate with the Agency. She did not attend a class for nonprotecting parents of abused children or engage in other recommended services. She denied that her children were at risk of harm, and generally acted in disregard of her children's physical and emotional welfare. R.M. actively defended George, continued to live with him, and withheld the location of their residence from the social worker.
Under these circumstances, the trial court could reasonably conclude that maintaining Guadalupe, Maria and Kelly in R.M.'s care, even with intensive services, would expose them to further sexual abuse or to a substantial risk of sexual abuse. The court reasonably determined that removal from parental custody was necessary to protect the daughters, and that there were no reasonable means to protect them without removing them from parental custody. (§ 361, subd. (c)(1).)
 DISPOSITION
The judgments as to Guadalupe, Maria and Kelly are affirmed. The jurisdiction order as to George, Jr., is reversed. Because we reverse the jurisdiction order, the disposition order and all subsequent orders as to George, Jr., are vacated. (§§ 361, subd. (a), 366, subd. (a)(1) [such orders apply only to a child who has been adjudicated dependent].)
The court's findings that George sexually abused Guadalupe and Maria constitute a prima facie showing that George, Jr., is a child described by subdivision (a), (b), (c) or (d) of section 300, and that he is at substantial risk of abuse or neglect. (§ 355.1, subd. (d)(3).) The court is directed to detain George, Jr., and to order the Agency to obtain a forensic interview of George, Jr., and any other evaluation that the court deems necessary to ensure his safety and well-being. (See §§ 300.2, 319, subd. (b), 355.1; In re Kieshia E.,supra, 6 Cal.4th at pp. 76-77.) The court is further directed to grant the Agency leave to amend the petition as to George, Jr., under section 300, subdivision (j) and/or to file a new petition under any applicable *Page 72 
subdivision of section 300. (In re John S., supra,88 Cal.App.4th at p. 1145; see, e.g., In re Amy M., supra,232 Cal.App.3d 849.) Any amended or new petition must be filed to allow the court to hear the matter within the time requirements of section 352, as dated from remittitur of this opinion.[14]
On June 23, 2010, the opinion was modified to read as printed above.
Huffman, Acting P. J., and Haller, J., concurred.
[1] Unless otherwise specified, further statutory references are to the Welfare and Institutions Code.
[2] George does not appeal.
[3] Guadalupe had attended her first sex education class on the day that she disclosed the molestation to the school counselor.
[4] For convenience, hereafter, we refer to section 300 by the relevant subdivision only.
[5] Penal Code section 288, subdivision (a), provides: "Any person who willfully and lewdly commits any lewd or lascivious act, including any of the acts constituting other crimes provided for in Part 1, upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony and shall be punished by imprisonment in the state prison for three, six, or eight years."
[6] Penal Code section 647.6, subdivision (a)(1), makes it a crime to annoy or molest any child under 18 years of age. "`Annoy' and `molest' ordinarily relate to offenses against children, with a connotation of abnormal sexual motivation" on the part of the adult. (People v. Lopez (1998)19 Cal.4th 282, 290 [79 Cal.Rptr.2d 195, 965 P.2d 713].) "The forbidden annoyance . . . is not concerned with the child's state of mind, but rather refers to the defendant's objectionable acts that constitute the offense." (Ibid.)
[7] In Kelly's and George, Jr.'s petitions under section 300, subdivision (j), the Agency alleged only that they were at substantial risk of being sexually abused pursuant to section 300, subdivision (d).
[8] Here, for example, the facts would support a finding that Kelly was a child described by section 300, subdivision (d), which also permits the court to assume jurisdiction of the child if it finds there is a substantial risk of sexual abuse to the child.
[9] Where a child's sibling has been sexually abused, a trial court could determine that such a child has been harmed, or is at risk, under a subdivision of section 300 that is not
enumerated in section 300, subdivision (j). (§ 355.1, subd. (d); see, e.g., In re Amy M. (1991) 232 Cal.App.3d 849,855 [283 Cal.Rptr. 788] [social services agency filed petition as to a child whose sibling was sexually abused under § 300, subds. (c) (j)].)
[10] "For the most part, Penal Code section 647.6 has been applied to incidents of explicit sexual conduct, where a defendant: fondled a minor's genitals and had her touch his genitals (People v. Moore (1986) 185 Cal.App.3d 1005
[230 Cal.Rptr. 237]); touched a minor's genitals through her clothing (People v. Monroe (1985) 168 Cal.App.3d 1205
[215 Cal.Rptr. 51]); fondled and had sexual intercourse with a minor (People v. Tate [(1985)] 164 Cal.App.3d 133
[210 Cal.Rptr. 117], and People v. Epps (1981)122 Cal.App.3d 691 [176 Cal.Rptr. 332]); solicited a sex act from a minor (People v. La Fontaine (1978) 79 Cal.App.3d 176
[144 Cal.Rptr. 729]); grasped a minor by her buttocks and rubbed himself against her body (People v. Moore (1955)137 Cal.App.2d 197 [290 P.2d 40]; exhibited his genitals to a minor (People v. McNair (1955) 130 Cal.App.2d 696 [279 P.2d800])." People v. Kongs (1994) 30 Cal.App.4th 1741,1750 [37 Cal.Rptr.2d 3271.
[11] The Andy G. court noted that there were other factors that convinced the court that Andy was at risk of sexual abuse, including that the father had exposed himself to one of his daughters while Andy was in the same room, and that the father had used Andy to get the daughter to approach the father. (Andy G, supra, 183 Cal.App.4th at p. 1414.)
[12] While a previous finding that a parent has sexually abused a sibling of the child constitutes prima facie evidence in any proceeding that the child is described by subdivision (a), (b), (c), or (d) of section 300 and is at substantial risk of abuse or neglect, none of the cases that we have discussed involved a prior finding of sexual abuse. (§ 355.1, subd. (d).)
[13] While the court considered the children's removal under section 361, subdivision (c)(1), section 361, subdivision (c)(4) also applies to Maria, Guadalupe and Kelly. Section 361, subdivision (c)(4) provides that a child may be removed from parental custody if the child or his or her sibling has been "sexually abused, or is deemed to be at substantial risk of being sexually abused, by a parent. . . . and there are no reasonable means by which the minor can be protected from further sexual abuse or a substantial risk of sexual abuse without removing the minor from his or her parent or guardian, or the minor does not wish to return to his or her parent or guardian."
[14] Nothing in this opinion shall be interpreted to prevent the Agency from relitigating the allegation that George, Jr., is at substantial risk of sexual abuse, based on new evidence. *Page 73