Filed 3/4/16  In re C.E. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re C.E., Jr., a Person Coming Under the Juvenile Court Law. | |
| CONTRA COSTA COUNTY CHILDREN AND FAMILY SERVICES BUREAU,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>C.E., Sr.,<br><br>        Defendant and Appellant. | A145402<br><br>(Contra Costa County Super. Ct. No. J14-00762) |

        C.E., Sr. (Father), father of nine-year-old C.E., Jr., (C.E.) appeals after the juvenile court declared C.E. a dependent child under Welfare and Institutions Code section 300, subdivision (b),[1] and ordered him removed from the home.  Father challenges an order, made at disposition, requiring him to participate in a sexual abuse assessment and to follow the program's recommendations, as part of his reunification plan.  We shall affirm the juvenile court's order.[2]

_____

        [1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

        [2] On February 26, 2016, the Bureau filed a motion to take additional evidence and a motion to dismiss this appeal.  According to the Bureau, Father recently participated in a sexual abuse assessment and, therefore, the issue raised on appeal is moot.  The evidence in question indicates that appellant was cooperating with a sexual abuse

## FACTUAL AND PROCEDURAL BACKGROUND

On July 22, 2014, the Contra Costa County Children and Family Services Bureau (Bureau) filed an original non-detained petition, pursuant to section 300, subdivision (b), alleging, inter alia, that then eight-year-old C.E. was at substantial risk of harm due to the parents' domestic violence; the most recent incident had occurred on July 11.[3]

In a detention/jurisdiction report filed on July 23, 2014, the social worker reported that C.E. and A.O. were currently in Mother's home. J.L. was in Father's home. Father had taken both C.E. and J.L. from Mother's home, but police returned C.E. to Mother after she was able to produce family court custody papers showing that she had sole legal and physical custody of him. Police would not return J.L. to Mother because she had no custody papers for him.

The social worker reported that the Bureau had received four referrals regarding the family between April 23 and July 15, 2014. The first referral, received on April 23, alleged that Mother was using methamphetamine in the children's presence, father was selling methamphetamine, and there was no food in the home. The second referral, received on May 22, alleged that Father had been sexually abusing 12-year-old A.O., forcing her to perform oral sex on him. It was also alleged that two of Mother's older daughters had previously been removed from the home due to Father's sexual abuse.[4] It was believed that Mother was not protecting A.O. and that the two boys were also "at 'possible' risk." Due to removal of the older daughters, Father was not allowed to be in the family home, but the reporter believed he was back in the home. The third referral, received on July 14, alleged that Father and Mother were sexually abusing one of

---

assessment well before this case was fully briefed. Because the Bureau failed to file these motions in a timely manner, we shall deny both motions.

[3] C.E.'s mother (Mother) is not a party to this appeal. The dependency matter also involves two other children—C.E.'s brother, J.L., and his half sister, A.O.—who are not part of this appeal. Mother is the parent of all three children; Father is the parent of J.L. and C.E.

[4] These two children, now teenagers, were in permanent placement in Alameda County.

Mother's older daughters. When this information came to light, Father "left the home with his sons." The fourth referral, received on July 15, alleged general neglect by Mother, who was hiding the children when the Bureau came to the house. It was also alleged that there was no food or electricity in the home and that Mother "does crank."

On July 16, 2014, an emergency response worker met with A.O., who denied that anyone in Mother's home was harming her "and even denied ever meeting" Father, who she said did not live in the home. She also denied that the police had ever been to her home, that anyone was harming Mother, or that anyone was touching her inappropriately. She said there was enough food in the home, and the lights and water were working. The emergency response worker believed that A.O. "was being defensive and was telling multiple lies regarding her home situation. She spoke quickly and seemed to have formulated her answers ahead of time."

On July 17, 2014, the emergency response worker interviewed C.E., who seemed like a happy child and who denied being harmed by anyone in the home. He said that Father had "kidnapped" J.L., but this had " 'only happened one time.' " C.E. did not seem defensive, but he seemed to have rehearsed what he was going to say. The emergency response worker also interviewed Mother on July 17. Mother said Father had sneaked into the house and taken the two boys. She said she was not sure how Father would have had the opportunity to molest A.O., who was always with Mother. Mother also acknowledged that there was domestic violence in her relationship with Father, and that Father had recently beaten her with a belt. Mother agreed to file a restraining order against Father, to avoid having the children removed from her care.

The emergency response worker had received a phone call from Father on July 17, 2014. Father said that Mother had asked him to come to the home to help her because the utilities had been disconnected, and she had agreed to let him stay there for a couple of nights. He said that he had found Mother whipping his sons with a belt, and therefore took off his belt and whipped Mother with it. He then decided to leave with his sons. Father also denied sexually molesting any of the children.

3

The family had had multiple referrals to the Bureau over many years. In 2007, Mother's two older daughters had been removed and allegations that Father sexually abused them had been substantiated. Those two children remained in permanent placement. Another of Mother's daughters had been removed in 2012 because she suffered from life threatening Type 1 diabetes, which Mother had failed to appropriately monitor. That child was now in permanent placement. An investigation was ongoing regarding new allegations of sexual abuse regarding A.O. and Mother's oldest daughter.

The Bureau recommended that the court detain C.E. and J.L. from Father, and further recommended that C.E., J.L., and A.O. remain in Mother's custody.

At the detention hearing on July 23, 2014, the juvenile court followed the Bureau's recommendations and detained C.E. from Father only.[5]

At the September 15, 2014 jurisdiction hearing, both parents pleaded no contest to the allegations in the petition regarding domestic violence and the juvenile court sustained the counts containing those allegations.

On October 30, 2014, the Bureau filed a subsequent petition, alleging that Mother failed to protect C.E. and the other two children from a substantial risk of domestic violence and sexual abuse in that she had failed to obtain a permanent restraining order against Father, she had failed to participate in domestic violence services, and her two oldest daughters had become dependents partly due to allegations of physical and sexual abuse against Father that the Alameda County Juvenile Court found to be true on May 30, 2007.

In an October 31, 2014 memorandum, the social worker reported that Mother had a total of seven children, four of whom were not in her custody due to failed reunification efforts. Presently, she had failed to obtain a permanent restraining order against Father and had failed to participate in any agreed-upon services, including domestic violence

---

[5] On August 29, 2014, the court found Father to be the presumed father of both C.E. and J.L.

4

services and parenting education. The Bureau was therefore requesting that the three children be detained from her care.

On October 31, 2014, the juvenile court ordered C.E. and his siblings detained.

At the February 11, 2015 jurisdiction hearing on the subsequent petition, Mother admitted, and the court found true pursuant to subdivision (g)(1) of section 300, an amended allegation in the subsequent petition that stated, "Mother is presently unable to provide adequate care and protection for the child due to her health concerns and delay in obtaining a domestic violence restraining order and an adequate safety plan."

In a March 20, 2015 disposition report, the social worker related that the children were currently placed in a foster home.[6] Father denied that any of the events described in the current or previous dependencies that involved him had occurred. The social worker believed that Father's "unaddressed domestic violence history and sexual abuse history presents him from being a safe parent for his sons at this time."

The Bureau recommended that the juvenile court order reunification services for both parents. It recommended that the case plan for Father include participation in a sexual abuse perpetration program, a domestic violence program, general counseling, parenting education, and substance abuse testing.

On March 20, 2015, the juvenile court ordered reunification services for the parents as recommended by the Bureau, with the exception of the requirement that Father participate in a sexual abuse perpetration program. The court set a contested hearing as to that component of Father's reunification plan.

In a memorandum filed on April 10, 2015, the social worker addressed the sexual abuse counseling component of the reunification plan, describing the juvenile court history relevant to that issue. After a petition was filed in February 2007, on behalf of Mother's two oldest daughters who were then 8 and 10 years old, the juvenile court had

---

[6] On February 16, 2015, Mother had given birth to another child, who tested positive at birth for amphetamines. Mother had made clear that she did not want to raise this child and the Bureau planned to place the child in an adoptive home as soon as possible.

sustained a count regarding sexual abuse by Mother's boyfriend—identified as Father—on May 30, 2007. One of the girls had described an incident in which Father instructed her to remove her clothes and lay on the floor, after which he performed oral sex on her. She continued to maintain that Father had sexually abused her. The social worker noted that Father denied having sexually abused the child, but the social worker believed "the incident that led to the above dependency is so severe as to cause significant concern regarding [Father's] ability to safely parent his sons[,] as well as to provide appropriate role-modeling to them."

At the contested disposition hearing, which took place on April 10, 2015, Father's counsel argued against a case plan requirement of participation in sexual abuse counseling. Counsel observed that, although the juvenile court had found true the 2007 sexual abuse allegation, Father was not a party to that matter, was not called as a witness, had denied committing the sexual abuse, and was never criminally prosecuted. In addition, in the present matter, the sustained counts in the original petition did not involve sexual abuse. Counsel for the Bureau responded that she understood counsel's concerns, and suggested that "what is really appropriate would be more of—that the father attend a sexual abuse evaluation and then follow the recommendations." Both counsel acknowledged a "split" in the case law regarding whether sexual abuse of a child of one gender makes a home unsafe for a child of the other gender.

At the conclusion of the hearing, the juvenile court modified the suggested reunification plan component to require that Father engage in a sexual abuse assessment and follow the program's recommendations. The court explained the basis for its order: "One of the girls that was the alleged victim still says yes it happened, father says no, it didn't. So there's some concern the court has about child abuse or child sexual abuse. That leads me to believe that an assessment is the best reasoned result to find out whether, in this case, there's some indication of sexual abuse of children tendencies [*sic*]."

On June 9, 2015, Father filed a notice of appeal.

6

## DISCUSSION

Father contends the juvenile court improperly ordered him to participate in a sexual abuse assessment and follow the program's recommendations, as part of his reunification plan.

" 'The juvenile court has broad discretion to determine what would best serve and protect the child's interests and to fashion a dispositional order accordingly. On appeal, this determination cannot be reversed absent a clear abuse of discretion. [Citation.]' [¶] The juvenile court may make "all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the child.' (§ 362, subd. (a) [citation].) The problem that the juvenile court seeks to address need not be described in the sustained section 300 petition. [Citation.]" (*In re Briana V.* (2015) 236 Cal.App.4th 297, 311 (*Briana V.*).) "[W]hen the court is aware of other deficiencies that impede the parent's ability to reunify with his child, the court may address them in the reunification plan." (*In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1008.)[7]

In the present case, Father maintains that the evidence does not support the order for a sexual abuse assessment both because the sustained allegations in the section 300 petition solely related to domestic violence between the parents and because the only evidence of sexual abuse by Father involved a seven-year-old finding, in a juvenile dependency case in which he was not a party, that he had molested Mother's older daughters.

First, in its dispositional orders, the juvenile court properly took into account all of the evidence regarding issues that could affect C.E.'s safety and Father's ability to reunify with him, regardless of whether those issues were described in the section 300 petition. (See *Briana V.*, *supra*, 236 Cal.App.4th at p. 311; *In re Christopher H.*, *supra*,

---

[7] For example, in *Brianna V.*, even though there was no evidence that father had sexually abused his children, the appellate court held that the juvenile court did not abuse its discretion when it considered the evidence as a whole and ordered father, a registered sex offender who had violated terms of his probation, to participate in sexual abuse counseling. (*Briana V.*, *supra*, 236 Cal.App.4th at pp. 311-312.)

50 Cal.App.4th at p. 1008; compare *In re Basilio T.* (1992) 4 Cal.App.4th 155, 172-173 [substance abuse component should not have been included in reunification plan in absence of any evidence that parents had a substance abuse problem].)

Second, the evidence shows that, in 2007, the Alameda County juvenile court found true an allegation in a section 300 petition that Father had sexually abused Mother's older daughters, who considered Father their stepfather, when they were approximately 8 and 10 years old.[8] The oldest daughter continued to maintain that Father had sexually abused her. There had also been a referral on May 22, 2014, alleging that Father was sexually abusing 12-year-old A.O. (See *Briana V.*, *supra*, 236 Cal.App.4th at pp. 311-312.)

In his opening brief, Father refers to "a split in the case law as to whether sexual molest of a child of one gender can pose a risk of molest to a child of the opposite gender." He then cites several cases in which appellate courts had found that sexual abuse of a female child in the household did not in itself place male children in the household at risk. (See *In re Alexis S.* (2012) 205 Cal.App.4th 48; *In re Maria R.* (2010) 185 Cal.App.4th 48; *In re Rubisela E.* (2000) 85 Cal.App.4th 177.)

Surprisingly, neither Father nor the Bureau discusses the case of *In re I.J.* (2013) 56 Cal.4th 766, 770 (*I.J.*), in which the California Supreme Court addressed "whether a father's sexual abuse of his *daughter* supports a determination that his *sons* are juvenile court dependents when there is no evidence the father sexually abused or otherwise mistreated the boys, and they were unaware of their sister's abuse before this proceeding began." Our high court "conclude[d] that a father's prolonged and egregious sexual abuse of his own child may provide substantial evidence to support a finding that all his children are juvenile court dependents." (*Ibid*.)

_____

[8] Although Father also states that he was neither a party to nor witness in the prior dependency case, the juvenile court's true finding as to the sexual abuse allegation was sufficient to justify the juvenile court's concern.

The *I.J.* court declined to examine studies regarding the relative risk to boys when a sister is abused, stating: "For present purposes, we may assume that father's other daughter is at greater risk of sexual abuse than are his sons. But this does not mean the risk to the sons is nonexistent or so insubstantial that the juvenile court may not take steps to protect the sons from that risk." (*I.J.*, *supra*, 56 Cal.4th at pp. 779-780.) Notably, the *I.J.* court disapproved the three cases relied on by Father in this case to support his argument that a prior finding of sexual abuse of a female child does demonstrate that a male child is similarly at risk. (*Id.* at pp. 780-781, disapproving *In re Alexis S.*, *supra*, 205 Cal.App.4th 48; *In re Maria R.*, *supra*, 185 Cal.App.4th 48; *In re Rubisela E.*, *supra*, 85 Cal.App.4th 177.)

The *I.J.* court discussed and left intact the holding of *In re P.A.* (2006) 144 Cal.App.4th 1339 (*P.A.*), in which the appellate court had described the abuse in that case as "less shocking" than other cases, but still concluded that, where "a child has been sexually abused, any younger sibling who is approaching the age at which the child was abused, may be found to be at risk of sexual abuse. . . . [A]berrant sexual behavior by a parent places the victim's siblings who remain in the home at risk of aberrant sexual behavior." (*P.A.*, at p. 1347, fn. omitted, quoted in *I.J.*, *supra*, 56 Cal.4th at p. 776.)

Here, although the abuse described in the prior dependency case was not necessarily as egregious or prolonged as that described in *I.J.*, our Supreme Court's decision plainly supports the juvenile court's order in this case, which related only to a single component of Father's reunification plan. (Compare *I.J.*, *supra*, 56 Cal.4th at p. 770.) The juvenile court reasonably found that there was at least some risk that C.E., "who is approaching the age at which [Mother's oldest daughter] was abused," could become the victim of Father's "aberrant sexual behavior." (*P.A.*, *supra*, 144 Cal.App.4th at p. 1347; accord, *In re Andy G.* (2010) 183 Cal.App.4th 1405, 1415 [cited in *I.J.*; holding that "juvenile court properly could conclude that [father's] aberrant sexual behavior with [daughters] placed their brother . . . at risk of sexual abuse"]; *In re Karen R.* (2001) 95 Cal.App.4th 84, 90-91 [discussed in *I.J.*; disagreeing with cases suggesting that only female siblings are in substantial danger of sexual abuse by a father after a

sexually abused female child is removed from home]; cf. *Los Angeles County Department of Children & Family Services v. Superior Court* (2013) 215 Cal.App.4th 962, 968 ["Cases overwhelmingly hold that sexual abuse of one child may constitute substantial evidence of a risk to another child in the household—even to a sibling of a different sex or age or to a half sibling"].)

Given the evidence in the record regarding Father's prior sexual abuse of Mother's older daughters, we conclude the court did not abuse its discretion when it made the narrowly tailored order requiring Father to participate in a sexual abuse assessment. (See *Briana V.*, *supra*, 236 Cal.App.4th at p. 311; see also *I.J.*, *supra*, 56 Cal.4th at pp. 770, 779-780.)

## DISPOSITION

The order appealed from is affirmed.


_____
Kline, P.J.


We concur:


_____
Stewart, J.


_____
Miller, J.