Filed 8/9/13  In re Ashley H. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re ASHLEY H. et al., Persons Coming Under the Juvenile Court Law. | B242786 (Los Angeles County Super. Ct. No. CK90536) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>       Plaintiff and Respondent,<br><br>       v.<br><br>DOUGLAS H. et al.,<br><br>       Defendants and Appellants. | |

APPEAL from orders of the Superior Court of Los Angeles County. Jacqueline H. Lewis, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.) Affirmed.

Andre F. F. Toscano, under appointment by the Court of Appeal, for Defendant and Appellant Douglas H.

Lori A. Fields, under appointment by the Court of Appeal, for Defendant and Appellant Elizabeth H.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel and Melinda Green, Senior Associate County Counsel, for Plaintiff and Respondent.

The issue in this case is whether a father's sexual abuse of his step-daughter supports a determination that his son is subject to the jurisdiction of the juvenile court in the absence of evidence that the father sexually abused or otherwise mistreated him. Our Supreme Court recently affirmed a jurisdictional finding on facts very similar to those before us and disapproved a line of Court of Appeal cases relied on by Father. (*In re I.J.* (2013) 56 Cal.4th 766, 775-781 (*I.J.*); see also *Los Angeles County Dept. of Children & Family Services v. Superior Court* (2013) 215 Cal.App.4th 962, 963-970.) We conclude that *I.J.* is dispositive of the issue and affirm the jurisdictional finding.

The minor's mother also appeals, challenging the sufficiency of the evidence of her failure to protect her son, and contending that the juvenile court erred in removing the child from her custody. We see no error in the finding or order and so affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Ashley H. is the daughter of E.H. (Mother) and step-daughter of D.H. (Father). Father raised Ashley from the time she was three years old and considers her to be his daughter. Mother and Father also have a son, Douglas H.

On October 25, 2011, 14-year-old Ashley and 11-year-old Douglas were detained by the Los Angeles Department of Children and Family Service (DCFS) after Ashley disclosed to a school counselor that she had been raped multiple times by Father. When confronted with the allegations, Father denied them and Mother explained that Ashley is bipolar, suffers from depression, and is never left home alone unsupervised. She also stated Ashley claimed she had been raped the previous year, but fabricated the allegation in order to gain attention. Mother did not believe Ashley had been sexually assaulted. Ashley subsequently denied Father raped her. Ashley later stated she had been raped over a period of years, starting when she was 11, but refused to identify Father as her abuser. Douglas denied any knowledge of sexual or emotional abuse in the home. Appellants do not challenge the juvenile court's finding that Father sexually abused Ashley.

In 1999, the juvenile court sustained a petition alleging that Father sexually abused his 13-year-old step-daughter, Dominique. Father was charged with continuous sexual abuse of a child in violation of Penal Code section 288.5, but the charges were dismissed for lack of evidence. Mother recalled that in 2001, shortly after she and Father married, she had accompanied Father to court regarding "some sort of abuse," but that the case was dismissed.

DCFS filed a petition pursuant to Welfare and Institutions Code[1] section 300, containing allegations under subdivisions (b), (d), and (j). Counts b-1 and d-1 alleged that Father had forcible sexual intercourse with Ashley, Mother knew or should have known Ashley was being sexually abused, and Mother failed to protect her from Father. Counts b-2 and d-2 alleged that in April 1999, Father had sexually abused his step-daughter Dominique. A single count was pled under subdivision (j) alleging Father's sexual abuse of Ashley and Mother's failure to protect Ashley from that abuse endangered Douglas's physical health and safety and placed him "at risk of physical harm, damage, sexual abuse and failure to protect." The minors were detained and placed in separate foster homes.

The adjudication hearing, originally set for December 7, 2011, was held on June 13 and 14, 2012. Ashley was declared unavailable as a witness. The juvenile court received the DCFS reports and social workers' case notes into evidence; DCFS presented no other evidence in its case-in-chief. Father called four witnesses: a police detective and a social worker to whom Ashley recanted her story, Mother, and Ashley's adult sister, Jasmine. In closing argument, after reviewing the evidence supporting the allegation that Father had raped Ashley, DCFS described Mother's behavior as "almost as reprehensible as [Father's]" by calling Ashley a liar and refusing to provide her with any emotional support. DCFS argued that Father's conduct was "so heinous and mother's failure to protect so egregious that Douglas could not possibly be safe with these two parents."

---

[1]    Subsequent statutory references are to this code.

Douglas's counsel noted that Douglas wanted to return home. But after listening to Mother's testimony, he could not recommend that it was in Douglas's best interest to do so. Counsel indicated that it was "questionable" whether Father posed a risk to Douglas; however, "whether his mother is capable of protecting him if [Father] poses a risk is very, very clear from today's testimony."[2] Douglas's counsel asked the court to find that Mother failed to protect Douglas and that Father's sexual abuse of Ashley put Douglas at risk of emotional abuse.

The juvenile court sustained the following allegations contained in the petition under Welfare and Institutions Code section 300: Father sexually abused Ashley and Mother failed to protect Ashley from Father's abuse, which conduct endangers Ashley's "health and safety and places [her] at risk of physical harm, damage, sexual abuse, and failure to protect" as described in section 300, subdivision (b); Father sexually abused Dominique in 1999, which conduct endangers Ashley's "health and safety and places [her] at risk of physical harm, damage, sexual abuse, and failure to protect" as described in section 300, subdivision (d); and Father's sexual abuse of Ashley and Mother's failure to protect her places Douglas "at risk of physical harm, damage, and failure to protect" as described in section 300, subdivision (j).

The juvenile court addressed the risk to Douglas as follows: "[T]he court did dismiss Douglas out of the (d) allegations because I do not see, pursuant to recent case law -- or all case law, actually, that there is a specific risk of [Father] sexually abusing the child Douglas, based on his age and his gender. [¶] That being said, the Court did sustain the (j) allegation as to Douglas. Pursuant to the case of *In re Maria R.,* 185 Cal.App.4th 48, the Court really looked at whether or not the sibling of Ashley, Douglas, is at substantial risk of harm within any of the subdivisions enumerated in . . . subdivision (j). And I think that, clearly, for me, that is true. [¶] While I don't

---

2    For instance, counsel stated that mother "ducked many questions today by following up with questions of her own, or, after she made testimony that she perceived as perhaps damaging, started muttering to herself and changing the testimony right there on the stand."

4

necessarily believe that [Father] is a risk of sexual abuse to the minor Douglas, the risk of being raised by someone who has no problem forcibly raping 11-year-old girls puts this child at risk. [¶] And the same thing with the mother. Mother's unwillingness to protect Ashley from even this, even today, even after knowing everything here, clearly places Douglas as much at risk in his mother's care and custody, who would pick other people over her child, apparently, any time."

At the disposition hearing, the court admitted the "Last Minute Information" dated June 29, 2012. It stated that Mother had not maintained contact with Ashley or visited her since the adjudication hearing on June 14. Ashley reported she had attempted to contact her mother by phone, but received no response. Mother denied being upset with Ashley, stating that she had been busy helping her older daughter move.

At the disposition hearing, neither parent argued Douglas should be released to their care. Rather, they argued the court should allow unmonitored visits, with Mother requesting overnight visits.

The juvenile court declared Ashley and Douglas dependents and removed them from their parents' care. The children were ordered suitably placed. Mother and Father were ordered to participate in reunification services. The court ordered monitored visits with Douglas and issued a no contact order between Father and Ashley.

Mother and Father timely appeal the juvenile court orders.

## II. CONTENTIONS

Father and Mother challenge the juvenile court's jurisdictional findings regarding Douglas under section 300, subdivision (j). Mother also challenges the disposition order removing Douglas from her care. Neither parent challenges the jurisdictional or dispositional findings or orders regarding Ashley.

5

## III.  STANDARD OF REVIEW

"'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them.  "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193.)  "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court.  [Citations.]  '"[T]he [appellate] court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence . . . such that a reasonable trier of fact could find [that the order is appropriate]."'  [Citation.]" (*In re Matthew S.* (1988) 201 Cal.App.3d 315, 321.)'" (*I.J., supra,* 56 Cal.4th at p. 773.)

## IV.  DISCUSSION

### 1. *Father's appeal*

The sole issue presented on Father's appeal is whether his sexual abuse of his stepdaughter by itself supports a finding under section 300, subdivision (j), that his son is subject to the jurisdiction of the juvenile court.  That subdivision provides that a child is a dependent of the juvenile court if "[T]he child's sibling has been abused or neglected, as defined in subdivision (a), (b), (d), (e), or (i), and there is a substantial risk that the child will be abused or neglected, as defined in those subdivisions.  The court shall consider the circumstances surrounding the abuse or neglect of the sibling, the age and gender of each child, the nature of the abuse or neglect of the sibling, the mental condition of the

6

parent or guardian, and any other factors the court considers probative in determining whether there is a substantial risk to the child."

As the parties acknowledge, our appellate courts have disagreed over whether subdivision (j) supports dependency jurisdiction over a minor such as Douglas in the absence of evidence that would support a finding of jurisdiction under subdivisions (a), (b), (d) (e) or (i), independent of the sexual abuse of the minor's opposite sex sibling. Thus, appellants rely on the reasoning of *In re Alexis S.* (2012) 205 Cal.App.4th 48, *In re Maria R.* (2010) 185 Cal.App.4th 48 and *In re Rubisela E.* (2000) 85 Cal.App.4th 177, to argue that Douglas is not subject to dependency court jurisdiction under subdivision (j), while respondent cites *In re Andy G.* (2010) 183 Cal.App.4th 1405, *In re P.A.* (2006) 144 Cal.App.4th 1339 and *In re Karen R.* (2001) 95 Cal.App.4th 84, to argue for the opposite conclusion. Since the parties completed briefing on this appeal, our Supreme Court has resolved this conflict in the case law.

In *I.J.*, *supra*, 56 Cal.4th at page 770, the court addressed the issue of "whether a father's sexual abuse of his *daughter* supports a determination that his *sons* are juvenile court dependents when there is no evidence the father sexually abused or otherwise mistreated the boys, and they were unaware of their sister's abuse before this proceeding began." The court held that "when a father severely sexually abuses his own child, the court may assume jurisdiction over, and take steps to protect, the child's siblings" (*id*. at p. 780) and disapproved, to the extent they were inconsistent with this holding, the cases relied on by appellants. (*Id.* at pp. 780-781.) *I.J.* is dispositive of father's appeal. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [California Supreme Court decisions are binding on all state courts in California].)


2. *Mother's appeal*


Mother contends that "[t]here is no evidence to support a reasonable inference that Father poses any risk of physical or sexual harm to Douglas; therefore, Mother's inability

7

to properly protect Ashley from sexual abuse has no logical relation to her ability to protect Douglas." This argument lacks merit.

The juvenile court recounted the evidence of Mother's failure to protect Ashley, including that she refused to consider the possibility Ashley was raped by Father, though she knew Father had forcibly raped another teenage girl living in his home. The court found Mother was "clearly lying" in her testimony, and chose to protect her relationship with Father instead of protecting her child. The court concluded, "Mother's unwillingness to protect Ashley from even this, even today, even after knowing everything here, clearly places Douglas as much at risk in his mother's care and custody, who would pick other people over her child, apparently, any time." The finding is supported by substantial evidence and we will not disturb the trial court's credibility assessment. (See *In re Heather A., supra*, 52 Cal.App.4th at p. 193.)

Mother also challenges the dispositional order removing Douglas from her care. But Mother did not seek release of Douglas to her care at the disposition hearing, and so has forfeited the issue on appeal. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293, fn. 2.) Were we to consider the argument, we would uphold the disposition order.

"The juvenile court has broad discretion to determine what would best serve and protect the child's interests and to fashion a dispositional order accordingly. On appeal, this determination cannot be reversed absent a clear abuse of discretion." (*In re Baby Boy H.* (1998) 63 Cal.App.4th 470, 474; see also *In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1006.) A court abuses its discretion when it makes a determination that is "'"arbitrary, capricious, or patently absurd."'" (*In re Mark V.* (1986) 177 Cal.App.3d 754, 759, quoting *In re Geoffrey G.* (1979) 98 Cal.App.3d 412, 421.)

As noted above, Mother utterly failed to protect Ashley from what the juvenile court described as "horrendous sexual abuse." As disturbing as Father's conduct was, Mother's response to it was equally abhorrent: A withholding of the love, comfort and support that any child would need to begin to heal the painful wounds inflicted by her father's betrayal of the parent/child relationship. The court acted well within its discretion in removing Douglas from Mother's custody.

8

## V. DISPOSITION

The orders under review are affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


KUMAR, J.*


We concur:


TURNER, P. J.


MOSK, J.

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.