Filed 10/16/13  In re Rita V. CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re RITA V., et al., Persons Coming Under the Juvenile Court Law. | |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> E. H., <br><br> Defendant and Appellant. | B246852 <br><br> (Los Angeles County Super. Ct. No. CK96321) |

APPEAL from orders of the Superior Court of Los Angeles County, Steven R. Klaif, Juvenile Court Referee.  Affirmed.

Neale B. Gold, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Navid Nakhjavani, Deputy County Counsel, for Plaintiff and Respondent.

Appellant E. H. (Mother) appeals the court's jurisdictional findings. The court found true that E.'s husband, Jose S., inappropriately touched and disciplined E.'s teenage daughter, Rita V. (Jose's stepdaughter), and that Mother failed to protect her. The court further found that Mother failed to prevent Jose from excluding Rita from the family home, creating a "detrimental and endangering" situation for the girl. Finally, the court found that Rita's half-siblings, Juan, Joaquin and Mark, were in danger of serious physical harm as a result of Mother's failure to protect Rita from inappropriate physical discipline. Mother contends the court's findings were not supported by substantial evidence. Mother further contends that the portions of the dispositional order removing Rita from her custody and requiring Mother's participation in family maintenance services was error. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Pre-Petition Intervention*

The family came to the attention of the Los Angeles Department of Children and Family Services (DCFS) on May 22, 2012, when it received a call from Angel's Flight, a youth shelter, concerning Rita.[1] Rita, then 17, had taken a cab to the shelter on May 21. A few days later, a caseworker interviewed Rita, who said that for the last "couple of years," Jose had tried to fondle her breasts and, on one

---

[1]     There had been two prior referrals closed as unfounded. In October 2006, DCFS received allegations that the children were victims of general neglect, and of emotional and physical abuse by Jose. The caller alleged Jose slapped and threw Mother, cursed at Rita, called her names and pulled her hair. In February 2010, the caller reported that Rita said Jose hit or "tapped" her on the head, said demeaning things to her, and on one occasion, required her to kiss him on the lips for giving her money. Interviewed at the time, Jose denied the request for a kiss was sexual and Mother said she believed Jose was being "playful."

occasion, had grabbed her breast and on another, had put his hand between her legs. When she rebuffed him or pushed him away, he said she had "nothing to lose" and that "no one [would] believe [her]." Jose also reportedly called Rita a "'whore,'" "'slut,'" and "'bastard.'" Rita said Mother was aware of the verbal abuse, but not the inappropriate touching. Rita admitted smoking marijuana, which she stated she did to "'tune . . . out'" the yelling in the home. Rita reported that Mother and Jose screamed and yelled a lot, and that she was fearful Mother would not protect her younger brothers from physical abuse.

The caseworker interviewed the younger children, half-siblings Juan (then 8), Joaquin (then 7), and Mark (then 4). All denied having been abused in any fashion.[2] Jose denied having sexually abused or inappropriately touched Rita. With respect to the allegations of physical abuse, he said he sometimes "'tapped'" Rita on the face "'so she could pay attention.'" He stated that Rita had gone to Angel's Flight when he had told her "she needed to get her act together if she wanted to remain in the home." He described her as "'the bad seed that will rot the other seeds.'"[3] Mother stated that she and Jose attempted to discipline Rita when she was caught using marijuana, but denied that Rita was physically disciplined by either of them. Mother denied being present when any sexual abuse or inappropriate touching occurred. She claimed to have threatened to send Rita to Mexico to live with her father Adrian in order to frighten the girl into returning to the family home. Mother agreed to a voluntary family maintenance plan and

---

[2]    Joaquin refused to talk about possible domestic violence between Mother and Jose, and Mark said he had observed Jose screaming at Rita or being "'mean'" to her.

[3]    Rita's father, Adrian V., resides in Mexico. DCFS was initially unable to contact him. Adrian was ultimately found to be non-offending, and the court instructed DCFS to investigate the feasibility of sending Rita to live with him.

agreed that Rita could be detained.  However, the caseworker formed the impression that Mother did not believe Jose had inappropriately touched Rita.

At the team decision meeting, Rita stated she had reported Jose's "abuse" to Mother, who "did nothing."[4]  Jose denied doing anything more serious than forcing Rita to hug him when she did not want to.  Mother seemed "very hesitant" to believe Rita's allegations of inappropriate touching and "appeared to minimize the allegations," but nonetheless agreed to participate in a voluntary family reunification plan.  Rita was placed in foster care.

In September 2012, several months after institution of the voluntary family reunification plan, the caseworker uncovered a record of Jose's 1984 arrest for lewd conduct with a child under the age of 14.  Re-interviewed at that time, Jose initially denied having been arrested, but later admitted that another stepdaughter had accused him of "'touch[ing] her.'"  He attempted to minimize the incident and claimed the girl later apologized.  Jose also claimed that the girl had falsely accused him because he would not buy her a certain make of car; he claimed the girl was mentally ill.

B.  *Petition and Detention*

On October 23, 2012, based on the new information about Jose and on Mother's continuing reluctance to believe Rita, the caseworker sought and received removal orders covering Rita and the three boys.[5]  On November 6, a petition was filed seeking jurisdiction over all four children under Welfare and Institutions

---

[4]    Because Rita repeatedly stated that she had not reported the inappropriate touching to Mother, we assume she was referring to the physical abuse.

[5]    The orders removed Rita from both parents and the boys from Jose only.  As a result of the order covering the boys, Jose temporarily left the family home to live in his car.

Code section 300.[6]  A detention hearing was held that same date.  DCFS sought to have Rita detained in foster care and the boys detained with Mother under the condition that Jose move out of the family home.  The court detained Rita from Mother, and she remained in foster care.[7]  It found that a prima facie case for detaining the boys had been established.  However, because Jose was medically fragile and relied on Mother for his daily care and transportation to medical appointments, the court allowed Jose to remain in the family home.[8]

C.  *Jurisdiction/Disposition*

Interviewed for the jurisdictional/dispositional report, Rita explained how she came to be at Angel's Flight.  She stated that the day she left, Jose came into her room, slapped her, and told her to get out of the house because he did not want to deal with her anymore.[9]  Mother asked why she was leaving and told her not to listen to Jose because he was not really going to kick her out of the house.  The girl had in her possession a flyer for Angel's Flight and decided to call the listed number.  The organization sent a cab for her.  Afterward, Mother asked her to return home, but Rita said she was happier at the shelter.  Rita did not hear of any plan to take her to live with her father until after she arrived at Angel's Flight.

---

[6]   Undesignated statutory references are to the Welfare and Institutions Code.

[7]   Mother was permitted unmonitored visits with Rita in a public setting, as long as Jose was not present.

[8]   At the time of the hearing, Jose was suffering from kidney failure and loss of sight and undergoing dialysis three times a week.

[9]   Mother contended that Rita had previously been expelled from a continuation school for possession of marijuana.  Jose found her a school that allowed her to work on assignments from home.  On the day Jose told her to get out, he had found out that she was not doing the homework or turning it in.

Mother stated Jose told Rita to pack her clothes because he was going to take her to Mexico to live with her father. Mother reported telling Rita not to leave and that it was her home, but Rita replied she did not want to be there. Jose admitted telling Rita to pack her things, but said his plan had been to drive her to Mexico to be with her father. After learning that Rita had left, Jose advised Mother to call the police. A short time after the girl left, Mother spoke with a representative from Angel's Flight and gave permission for Rita to stay. Rita's father, Adrian, reported that Rita told him she left voluntarily because Jose had been touching her.

During the interview preceding the jurisdictional/dispositional hearing, Rita provided further information with respect to the alleged physical abuse. She recalled an incident when she, Jose and Mother had been in an elevator. Jose had repeatedly attempted to hit her face, and she had had to put her hands up to protect herself. Mother intervened to separate them. Rita further recalled seeing Jose hit her siblings with a belt. She stated that it had occurred "long before" she left the home and that more recently, the boys had been able to keep away from Jose due to his illness. With respect to the inappropriate touching, she stated that she had discussed it with Mother during a session with her therapist at Angel's Flight. Mother asked where and when it happened and why Rita had not told her before. Rita asked if Mother believed her. Mother said she "had to" because Rita was her daughter, but Rita questioned whether she truly did.

Re-interviewed for the jurisdictional/dispositional report, Juan stated he had been hit on the back of his hand by Jose. Joaquin stated Jose had hit him once with a belt. Mark continued to deny having been abused in any fashion. Jose stated he might have accidentally touched Rita's breast when he stumbled or put an arm around her for support. Mother continued to deny that Jose had ever physically disciplined Rita. She told the caseworker that she did not believe Jose had

inappropriately touched Rita and that there would be no risk if Rita were returned home because "all the accusations are false."

At the January 7, 2013 jurisdictional/dispositional hearing, the court found true that Jose sexually abused Rita by "fondl[ing] [her] breasts and between [her] legs" and that Mother "knew of the . . . sexual abuse . . . and failed to protect [Rita]," which supported assertion of jurisdiction over Rita under section 300 subdivision (b) (failure to protect) and subdivision (d) (sexual abuse). The court also found that Jose inappropriately physically disciplined Rita by striking her face, that Mother knew of the abuse and failed to protect the child, and that these actions endangered the boys, Juan, Joaquin and Mark, as well as Rita, supporting the assertion of jurisdiction over all the children under section 300, subdivision (b) (failure to protect) and, with respect to the boys only, subdivision (j) (abuse of sibling). The court further found that Jose placed Rita in "a detrimental and endangering situation" by excluding Rita from the family home in May 2012, and that Mother allowed Jose to exclude her. The court struck allegations that Rita had suffered serious physical harm and that the sexual abuse of Rita or the act of excluding Rita from the home placed the boys at risk of harm.[10]

Turning to disposition, the court ordered Mother to participate in sex abuse awareness counseling, individual counseling to address case issues and conjoint counseling with Rita when her therapist deemed it appropriate. Jose was ordered to attend sexual abuse counseling for perpetrators, a parenting class and individual

---

[10]   DCFS conceded there was insufficient evidence to support a count under section 300, subdivision (g), and the court struck the allegation that Mother "failed to make a plan for the child's ongoing care and supervision" or "failed to provide the child with the necessities of life including food, clothing shelter and medical care."

counseling to address case issues.  The court also ordered provision of family preservation services.

## DISCUSSION

A. *Jurisdiction Over Rita*

Mother contends substantial evidence does not support the findings that she failed to protect Rita from sexual and physical abuse or that she endangered Rita by allowing Jose to exclude her from the family home.  We conclude that substantial evidence supports the findings with respect to failure to protect from sexual and physical abuse, and that we need not resolve whether jurisdiction was also warranted as the result of Jose ordering Rita out of the family home.

1. *Mootness*

Respondent contends all issues with respect to Rita are moot, as she reached the age of majority while the appeal was pending.  Generally, "[w]hen no effective relief can be granted, an appeal is moot and will be dismissed." (*In re Jessica K*. (2000) 79 Cal.App.4th 1313, 1315-1316.)  "We decide on a case-by-case basis whether subsequent events in a juvenile dependency matter make a case moot and whether our decision would affect the outcome in a subsequent proceeding." (*In re Yvonne W*. (2008) 165 Cal.App.4th 1394, 1404.)  Here, the court's true finding with respect to the allegations involving Rita formed the basis for assertion of jurisdiction over the boys.  Accordingly, the court's findings have implications beyond its assertion of jurisdiction over a person who is currently an adult, and matters pertaining to Rita are not entirely moot.  (See *In re Drake M*. (2012) 211 Cal.App.4th 754, 762-763 [case was not moot where juvenile court findings could be prejudicial to appellant or could potentially impact current or future dependency proceedings]; *In re D.C*. (2011) 195 Cal.App.4th 1010, 1015 [same].)

However, it is the case that "'[w]hen a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence.'" (*In re I.J.* (2013) 56 Cal.4th 766, 773, quoting *In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.) The finding that Jose endangered Rita by ordering her out of the home, and that Mother allowed it to happen, has no long-term implications with respect to Mother or the continuing proceedings involving the three boys. We need not, therefore, address Mother's contention that that finding was not supported by substantial evidence.

2. *Substantive Analysis*

Section 300 permits assertion of jurisdiction over any child who comes within one or more of the categories set forth in its provisions. (*In re Veronica G.* (2007) 157 Cal.App.4th 179, 185.) Pertinent here are subdivisions (b) and (d) of section 300. Subdivision (b) permits a finding of jurisdiction if, among other things, "[t]he child has suffered, or there is substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, or the willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left . . . ." Subdivision (d) predicates jurisdiction on a finding that "[t]he child has been sexually abused, or there is a substantial risk that the child will be sexually abused . . . by his or her parent or guardian or a member of his or her household, or the parent or guardian has failed to adequately protect the child from sexual abuse

9

when the parent or guardian knew or reasonably should have known that the child was in danger of sexual abuse."

DCFS bears the burden of proving by a preponderance of the evidence that the minor comes under the juvenile court's jurisdiction. (*In re I.J.*, *supra*, 56 Cal.4th at p. 773.) "We review the juvenile court's jurisdictional findings for sufficiency of the evidence. [Citations.] We review the record to determine whether there is any substantial evidence to support the juvenile court's conclusions, and we resolve all conflicts and make all reasonable inferences from the evidence to uphold the court's orders, if possible. [Citation.]" (*In re David M*. (2005) 134 Cal.App.4th 822, 828.)

Mother contends no evidence supports that she negligently or willfully failed to protect Rita from physical abuse or that she knew or reasonably should have known the child was in danger of sexual abuse. Focusing on the May 2012 period when Rita arrived at Angel's Flight and the statements Rita then made about keeping information concerning Jose's offensive behavior from Mother, she contends that undisputed evidence establishes that she did not know about his behavior prior to Rita leaving the home. She contends that anything that happened subsequently was irrelevant because Rita was detained and under the protection of DCFS. For the reasons set forth, we disagree.

First, substantial evidence supports that Mother was aware of Jose's physical abuse prior to May 2012. Both Rita and Jose stated that he regularly hit or slapped her on the head and arm, and neither indicated this was done only in private. Rita stated at the team decision meeting that she reported Jose's abuse to Mother who did nothing. In addition, Rita described a specific incident when Mother was present where she was forced to put up her hands to ward off his blows. Mother herself described an incident when she observed Jose pull Rita's ear. The court

10

could reasonably infer from that evidence that Mother was present and failed to protect Rita from inappropriate physical discipline on at least some occasions.

More importantly, in determining whether the children would be at risk from parental abuse or neglect, the court is required to focus on the circumstances as of the time of the jurisdictional hearing and determine whether they support that the child is at risk of serious harm in the future. (*In re Maria R.* (2010) 185 Cal.App.4th 48, 60, disapproved in part on another ground in *In re I.J., supra,* 56 Cal.4th 766; *In re Rocco M.* (1991) 1 Cal.App.4th 814, 824.) By the time of the January 2013 jurisdictional hearing, Mother had been aware for months of Rita's reports of having been inappropriately touched and disciplined by Jose. She had heard about it from the caseworker, from Rita at the team decision meeting and during the session with Rita's therapist. In addition, Mother knew that in 2010, Jose had demanded Rita kiss him in exchange for giving her some money. While Mother's belief that he was engaged in harmless horseplay may have been reasonable at the time, Rita's more recent reports and the discovery that Jose had been accused of inappropriately touching a young girl in the past should have caused her to see his actions in a new light and give more credence to her daughter. Although Mother professed to believe her daughter, both Rita and the caseworker expressed skepticism about her true feelings. We need not, however, rely on their perceptions. On the eve of the jurisdictional hearing, Mother told the caseworker that she thought Rita was lying and that "all the accusations [were] false." This supported the court's finding that Rita was at risk of physical and sexual abuse at the time of the hearing and in the future due to Jose's actions and Mother's unwillingness or inability to protect her.

Finally, the fact that Rita was already in foster care at the time of the court's jurisdictional findings does not change the analysis. Mother had entered into a voluntary agreement allowing Rita to be placed outside the home. She could have

11

changed her mind at any point and demanded Rita's return without having completed any portion of the voluntary reunification plan. Absent a jurisdictional finding and assertion of dependency jurisdiction, Rita was not assured of protection from Jose.

Our conclusion that the actions of a parent that postdate DCFS intervention are relevant to support a jurisdictional finding under subdivisions (b) and (d) is supported by the holding in *In re Maria R.* There, the mother similarly contended that she could not be found to have failed to protect her daughters because she did not know and could not reasonably have known that they were in danger of sexual abuse by her husband. (*In re Maria R.*, *supra,* 185 Cal.App.4th at p. 60.) The court found that certain actions by her husband -- such as taking the girls to shop for provocative clothing -- should have aroused her suspicions. (*Ibid.*) Moreover, once the girls reported the abuse and were detained, the mother, rather than protect them, "denied that any abuse had occurred," "maintained that the girls were lying," and otherwise attempted to undermine the agency's attempt to address the situation. (*Id.* at pp. 53, 60.) The appellate court concluded that "[b]ased on [the mother's] denials that the girls had been sexually abused and her refusal to cooperate with the Agency, the trial court could reasonably have found that [she] failed to protect [the girls] from sexual abuse." (*Id.* at p. 61; see also *In re Katrina W.* (1994) 31 Cal.App.4th 441, 446-447 [upholding assertion of section 300 jurisdiction supported, in part, by finding that mother did not believe her daughter had been molested].)

Further support can be derived from this court's decision in *In re Carlos T.* (2009) 174 Cal.App.4th 795, 806. The juvenile court there initially found that the father had raped his young daughter and that the mother had failed to protect her. (*Id.* at p. 799.) After the girl and her brother were detained and the father imprisoned, DCFS received information that the brother had also been molested by

12

the father; it filed a supplemental petition asserting new bases for assertion of jurisdiction over him, which the juvenile court found true. (*Id*. at pp. 799-802.) On appeal, the parents contended there was no substantial risk of harm at the time of the supplemental jurisdictional hearing because the father had been incarcerated and the children "already had been declared dependent . . . , and therefore were protected from future abuse." (*Id*. at p. 805.) We rejected that contention, noting that if the father were to be released from custody for any reason, "there is every reason to believe that [he] would resume his sexual abuse of [the children] without the state intervening to prevent him from obtaining access to them." (*Id*. at p. 806.) "The question to be asked in such a case is whether, in the absence of the state's intervention, there is a substantial risk that the child will be abused." (*Ibid*.)

In this case, there was a similar risk that Mother would reject the voluntary plan and attempt to regain custody of Rita. Without the court's intervention and jurisdictional findings, there was a substantial risk that the girl would be abused. Accordingly, the court did not err in asserting jurisdiction over Rita.

B. *Jurisdiction Over Juan, Joaquin and Mark*

Mother contends substantial evidence does not support assertion of jurisdiction over her three sons. She asserts there was no evidence that Jose physically abused them, or if he did, that she was aware and failed to protect them. As the Supreme Court recently explained in *In re I.J*., "[S]ection 300 does not require that a child actually be abused or neglected before the juvenile court can assume jurisdiction. The subdivisions at issue . . . require only a 'substantial risk' that the child will be abused or neglected. The legislatively declared purpose of these provisions 'is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional

13

well-being of children *who are at risk of that harm*.' (§ 300.2, italics added.) 'The court need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child.' (*In re R.V.* (2012) 208 Cal.App.4th 837, 843.)" (*In re I.J.*, *supra*, 56 Cal.4th at p. 773.)

Here, the court's basis for assertion of jurisdiction over the boys was not that they had been subjected to abuse -- although there was evidence that Jose had beaten one or more of them with a belt -- but that Jose had physically abused Rita, and Mother had failed to protect her. Subdivision (j) supports jurisdiction if "(1) the child's sibling has been abused or neglected as defined in specified other subdivisions and (2) there is a substantial risk that the child will be abused or neglected as defined in those subdivisions." (*In re I.J.*, *supra*, 56 Cal.4th at p. 774.) "'Subdivision (j) was intended to expand the grounds for the exercise of jurisdiction as to children whose sibling has been abused or neglected as defined in section 300, subdivision (a), (b), (d), (e), or (i). Subdivision (j) does not state that its application is limited to the risk that the child will be abused or neglected as defined in the same subdivision that describes the abuse or neglect of the sibling. Rather, subdivision (j) directs the trial court to consider whether there is a substantial risk that the child will be harmed under subdivision (a), (b), (d), (e) or (i) of section 300, notwithstanding which of those subdivisions describes the child's sibling.'" (*Ibid*, quoting *In re Maria R.*, *supra*, 185 Cal.App.4th at p. 64.) "'The broad language of subdivision (j) clearly indicates that the trial court is to consider the totality of the circumstances of the child and his or her sibling in determining whether the child is at substantial risk of harm, within the meaning of any of the subdivisions enumerated in subdivision (j). The provision thus accords the trial court greater latitude to exercise jurisdiction as to a child whose sibling has been found to have been abused than the court would have in the absence of that circumstance.'" (*Ibid*., italics omitted.)

14

We agree with the trial court's decision that the totality of the circumstances -- particularly, Jose's physical and sexual abuse of Rita and Mother's failure to protect or even believe her -- supported assertion of jurisdiction over the boys. When combined with the evidence that the boys had been inappropriately disciplined in the past, the court could reasonably conclude that, like Rita, they would be subject to increasing physical abuse when they became older and more defiant.

C. *Disposition*

Mother contends the court erred in removing Rita from her custody at the dispositional phase. As respondent points out, Rita is now 18 and can live wherever she wishes. We can afford Mother no effective relief with respect to this portion of the dispositional order and can foresee no impact it might have on future proceedings. Accordingly, this portion of the appeal is moot. (See *In re Jessica K.*, *supra*, 79 Cal.App.4th at pp. 1315-1317.)

Mother contends the court should not have ordered her to participate in family maintenance services but indicates in her brief that she was willing to participate in them on a voluntary basis. As Mother's participation in these services would not change if the order were to be reversed, we are puzzled as to what effective relief she seeks in this regard. In any event, as Mother concedes in her brief, once the court properly declares a child a dependent, it may "direct any and all reasonable orders to the parent to effectuate the provisions of section 362."[11] Here, the court determined that the boys were subject to dependency

---

[11]    Section 362 provides that when a child "is adjudged a dependent child of the court on the ground that the child is a person described by Section 300, the court may make any and all reasonable orders for the care, supervision, custody, conduct maintenance, and support of the child . . . ." (§ 362, subd. (a).) When the parent is permitted to retain
*(Fn. continued on next page.)*

15

jurisdiction under section 300 and because they were not being removed from the family home, properly ordered that family maintenance services be provided.

## DISPOSITION

The jurisdictional and dispositional orders are affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

MANELLA, J.

We concur:

WILLHITE, Acting P. J.

SUZUKAWA, J.

---

custody despite the finding that the child is a dependent child under section 300, "the parents or guardians shall be required to participate in child welfare services or services provided by an appropriate agency designated by the court." (§ 362, subd, (c).) As explained in section 16501, subdivision (a), "child welfare services . . . represent a continuum of services, including emergency response services, family preservation services, family maintenance services family reunification services, and permanent placement services . . . ." "[F]amily maintenance services are activities designed to provide in-home protective services to prevent or remedy neglect, abuse, or exploitation, for the purposes of preventing separation of children from their families." (*Id.*, subd. (g).)