Filed 1/8/16  In re Kaitlyn M. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re KAITLYN M., a Person Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | D068493 |
| Plaintiff and Respondent, | (Super. Ct. No. J519190A-B) |
| v. | |
| MITCHELL M., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of San Diego County, Sharon L. Kalemkiarian, Judge.  Affirmed.

Neil R. Trop, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Emily K. Harlan, Deputy County Counsel, for Plaintiff and Respondent.

Mitchell M. appeals orders declaring his minor daughters Kaitlyn M. and Keira M. dependents of the juvenile court under Welfare and Institutions Code section 300, subdivisions (d) and (j),[1] and placing the minors in the custody of their mother. Mitchell challenges the sufficiency of the evidence to support the court's jurisdictional findings. We affirm the orders.

FACTUAL AND PROCEDURAL BACKGROUND

In May 2014, Kaitlyn, who was six years old at the time, told her mother, Kimberly M., that Mitchell had touched her inappropriately. Reports from the time indicate that Kimberly did not believe Kaitlyn's allegations, but took the allegations seriously and took Kaitlyn to her pediatrician and also reported the incident to the police. Both the San Diego Police Department and the San Diego County Health and Human Services Agency (Agency) investigated the incident. In a forensic interview conducted shortly after, Kaitlyn gave a specific and detailed account of the abuse. She told the investigator that Mitchell had rubbed her vaginal area multiple times and that the first incident occurred when she was five years old. In her report, the forensic interviewer noted her concern that Kimberly did not believe Kaitlyn and was worried Kimberly was not able to support and protect her daughter. Mitchell was given a polygraph test by the police, and the Agency was told that the test indicated he was truthful in his denial of Kaitlyn's allegations. The police department's and Agency's investigations were closed as inconclusive, and the Agency advised Kimberly to obtain counseling for Kaitlyn.

---

[1]     Statutory references are to the Welfare and Institutions Code.

On April 22, 2015, the Agency received a new report that Kaitlyn had written a note to Kimberly stating "Dad touched my vagina." As with the initial incident, the referral indicated Kimberly did not believe her daughter. Kimberly told the social worker assigned to the family that she and Mitchell were separated, and she thought Kaitlyn was making up the allegations to keep Mitchell out of the family home. The social worker interviewed Kaitlyn at her school and Kaitlyn gave a detailed account of Mitchell molesting her on the couch in the living room on a day Mitchell was at the family's home to watch the minors while Kimberly was at work. When the social worker asked Kaitlyn how many times Mitchell had touched her, Kaitlyn told the social worker it had happened before but it turned out that it was just a dream because Mitchell had passed a lie detector test (Kaitlyn called the test a "metal detector"). Kaitlyn gave a consistent and similarly detailed account of the alleged abuse during a subsequent forensic interview. Kaitlyn told the social worker she had not seen her father do anything similar to Keira.

When Kimberly was interviewed by the social worker about Kaitlyn's allegations, she was extremely emotional and said she did not believe Kaitlyn because Kaitlyn lied often. Kimberly admitted she told Kaitlyn about the lie detector test. Kimberly also told the social worker that she did not continue therapy for Kaitlyn after the 2014 incident because at the first visit the therapist expressed concern about Kimberly's own actions. The social worker advised Kimberly not to discuss Kaitlyn's allegations with her and, if Kaitlyn brought the subject up, to listen empathetically and to keep an open mind that her daughter was being truthful. In his interview with the social worker, Mitchell denied Kaitlyn's allegations. He thought Kaitlyn was lying to protect Kimberly from him

3

because Kaitlyn had seen Kimberly happier and less stressed after he moved out of the family's home.

The social worker also conducted several collateral interviews. A family friend, Mitchell's stepfather, and Kimberly's mother all told the social worker that they thought Kaitlyn was lying about the abuse. Kaitlyn's teacher did not think Kaitlyn was untruthful more than other children her age and described Kaitlyn as a nice, smart, and positive girl. Kaitlyn attended school regularly. The guidance counselor at Kaitlyn's school told the Agency's social worker that some other children had complained about Kaitlyn chasing them after they told her to stop, but that Kaitlyn's behavior was normal for a child her age.

On May 13, 2015, the Agency filed a petition under section 300, subdivision (d) on behalf of Kaitlyn and a petition under subdivision (j) on behalf of Keira, who was 15 months old at the time. Both petitions alleged the sexual abuse described by Kaitlyn. The petition on behalf of Keira alleged she was at a substantial risk of abuse or neglect because of the abuse suffered by her sister. In its report for the detention hearing, the Agency recommended that the juvenile court make prima facie findings on the petitions, detain the minors in their home with Kimberly, and order no contact between the minors and Mitchell. The report also stated Kimberly had been cooperative and willing to comply with a safety plan and recommended services. At the May 14, 2015, detention hearing, the court followed the Agency's recommendations with the exception of permitting supervised visits between Keira and Mitchell.

4

A new social worker, Colleen Murray, was assigned to the family after the detention hearing. Murray interviewed Kimberly and reported that Kimberly continued to disbelieve Kaitlyn. Kimberly thought Kaitlyn was making up the abuse to keep Mitchell away from her. Kimberly was, however, proceeding in a way to protect Kaitlyn. Murray also interviewed Mitchell who said he would never admit molesting Kaitlyn. Mitchell stated he used the family's computer to watch pornography regularly, that Kaitlyn had access to the computer, and he did not know if she had been exposed to pornography as a result. Kaitlyn was also interviewed again, but was not asked about the abuse. Kaitlyn reported she had not seen her father in six weeks and denied being exposed to anything inappropriate on the family's computer. Kaitlyn also participated in a mental health screening, which showed "minor difficulties . . . present for over a year," and that Kaitlyn was at risk for developing a behavioral disorder and would likely benefit from treatment.

In her report for the jurisdiction and disposition hearing, Murray stated Kaitlyn's consistent and detailed accounts of the molest were strong evidence that the abuse occurred. Murray also noted other risk factors included Kimberly's denial and rationalization of the abuse, Mitchell's history of viewing pornography in the family's home, Kimberly's own history of sexual abuse, and Mitchell's poor sexual boundaries while in his marriage with Kimberly. The Agency's report recommended that the juvenile court make true findings on the petitions and declare the minors to be dependents. The Agency also recommended that the minors continue to be placed with Kimberly, that Mitchell have no visitation with Kaitlyn and supervised visits with Keira,

5

that Kimberly be provided family maintenance services, and Mitchell provided with family enhancement services.

At the initial jurisdiction and disposition hearing on June 3, 2015, Mitchell contested the Agency's recommendation and requested supervised visitation with Kaitlyn. Kimberly did not join in Mitchell's request. The juvenile court denied Mitchell's request for visitation, but requested more information from Kaitlyn's therapist about the possibility of visitation. The court instructed the Agency to address the issue in its supplemental report for the settlement conference, which it set for July 9, 2015. Thereafter, the Agency's social worker reported that Kaitlyn was worried that she would not see her father again and that Kaitlyn said she did not think Mitchell would hurt her again. Kaitlyn's therapist, who she had seen four times by that point, said Kaitlyn was not willing to talk about the abuse and wanted to see her father. The social worker also reported Mitchell visited Keira regularly and that the visitation was positive and appropriate.

At the settlement conference, counsel for the Agency stated the Agency was open to allowing visitation with Kaitlyn if therapeutically recommended. By the time of the contested hearing on July 16, 2015, Kimberly and Mitchell had been provided referrals, respectively, for nonprotective parent and sexual abuse offender group therapy but neither had started the services. At the hearing the juvenile court received the Agency's reports into evidence and heard the testimony of Murray and the most recent forensic interviewer, Marisol Olguin. The court also designated Olguin as an expert in

6

interviewing children who are victims of sexual abuse and assessing the quality of those interviews.

In her final report for the jurisdiction and disposition hearing, Murray stated that it was her "opinion that [Kaitlyn]'s consistency and detail of her account of the molestation over the time of two separate referrals gives strong credibility to the allegations of molest" by Mitchell. At the hearing Murray repeated her opinion that she thought Kaitlyn's accusations were truthful. She testified her opinion was not swayed by the fact that family members and a family friend saw a pleasant and loving relationship between Kaitlyn and Mitchell, and in her experience it was not uncommon for a child to want to continue contact with an abuser. Murray also testified she believed Keira was also at risk of sexual abuse based on Mitchell's alleged abuse of Kaitlyn.

At the conclusion of the Agency's presentation of evidence, Mitchell's counsel rested and did not offer any affirmative evidence. After arguments by counsel, the juvenile court made true findings by clear and convincing evidence on the petitions' allegations under section 300, subdivision (d) for Kaitlyn and subdivision (j) for Keira. The juvenile court found Kaitlyn's statements regarding both the prior and recent allegations of molestation credible. The juvenile court ordered the minors placed with Kimberly with continued family maintenance services in the home and family enhancement services for Mitchell. The juvenile court ordered supervised visits for Mitchell with Kaitlyn after one additional therapy session to prepare Kaitlyn for the visits.

7

DISCUSSION

On appeal, Mitchell contends the court's jurisdictional findings were not supported by substantial evidence. He asserts the record does not contain evidence of " 'such solid value' that the trial court's findings by clear and convincing evidence can be upheld."

In reviewing the sufficiency of the evidence on appeal, we consider the entire record to determine whether substantial evidence supports the juvenile court's findings. Evidence is "substantial" if it is reasonable, credible, and of solid value. (*In re S.A.* (2010) 182 Cal.App.4th 1128, 1140 (*S.A.*).) We do not pass on the credibility of witnesses, resolve conflicts in the evidence, or reweigh the evidence. Instead, we draw all reasonable inferences in support of the findings, view the record favorably to the juvenile court's order, and affirm the order even if other evidence supports a contrary finding. (*In re Casey D.* (1999) 70 Cal.App.4th 38, 52-53.) The appellant has the burden of showing there is no evidence of a sufficiently substantial nature to support the findings or order. (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 947.)[2]

Juvenile dependency proceedings are intended to protect children who are currently being abused or neglected, "and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm." (§ 300.2.) "The court need not wait until a child is seriously abused or injured to assume jurisdiction and take

---

[2]    "The burden of proof at the jurisdiction phase in the juvenile court is preponderance of the evidence; the burden of proof at disposition is clear and convincing evidence. (§ 355, subd. (a) [jurisdiction findings by preponderance of evidence]; § 361, subd. (c) [disposition findings by clear and convincing evidence].) Nonetheless, we review both jurisdiction findings and the disposition order for substantial evidence." (*In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1216, fn. 4.)

the steps necessary to protect the child." (*In re R.V.* (2012) 208 Cal.App.4th 837, 843; *In re Heather A.* (1996) 52 Cal.App.4th 183, 194-196.) The focus of section 300 is on averting harm to the child. (*In re Jamie M.* (1982) 134 Cal.App.3d 530, 536.)

With respect to Kaitlyn, Mitchell points to what he describes as inconsistencies in Kaitlyn's various statements to support his assertion of insufficient evidence. Essentially he asks this court to reweigh the evidence that was before the juvenile court at the jurisdiction and disposition hearing. Inconsistencies and conflicts in the evidence, however, "go to credibility of witnesses and weight of the evidence," matters that are the exclusive domain of the trial court. (*S.A.*, *supra*, 182 Cal.App.4th at pp. 1149, 1150.) Based on our review of the whole record, the juvenile court was entitled to find, as Murray concluded, that Kaitlyn's allegations were credible. If believed, Kaitlyn's statements without question sufficiently support the juvenile court's finding of sexual abuse under section 300, subdivision (d). (See *In re Alexis E.* (2009) 171 Cal.App.4th 438, 451 ["Evidence from a single witness, even a party, can be sufficient to support the trial court's findings."].)

As to Keira, we also conclude the evidence supports the juvenile court's jurisdictional finding under section 300, subdivision (j). "Subdivision (j) applies if (1) the child's sibling has been abused or neglected as defined in [specified other] subdivisions and (2) there is a substantial risk that the child will be abused or neglected as defined in those subdivisions." (*In re I.J.* (2013) 56 Cal.4th 766, 774 (*I.J.*).) Under the provision the court must "consider the circumstances surrounding the abuse or neglect of the sibling, the age and gender of each child, the nature of the abuse or neglect of the

9

sibling, the mental condition of the parent or guardian, and any other [facts] the court considers probative in determining whether there is a substantial risk to the child." (§ 300, subd. (j).)

" '[S]ubdivision (j) was intended to expand the grounds for the exercise of jurisdiction as to children whose sibling has been abused or neglected as defined in section 300, subdivision (a), (b), (d), (e), or (i). Subdivision (j) does not state that its application is limited to the risk that the child will be abused or neglected as defined in the same subdivision that describes the abuse or neglect of the sibling. Rather, subdivision (j) directs the trial court to consider whether there is a substantial risk that the child will be harmed under subdivision (a), (b), (d), (e) or (i) of section 300, notwithstanding which of those subdivisions describes the child's sibling.' " (*I.J., supra,* 56 Cal.4th at p. 774, italics omitted.) Because the assessment of risk to a sibling depends in part on the circumstances of an abused or neglected child, "subdivision (j) implies that the more egregious the abuse, the more appropriate for the juvenile court to assume jurisdiction over the siblings." (*Id.* at p. 778.)

We agree with the Agency that substantial evidence supports the juvenile court's true finding that Keira was at substantial risk of harm. Both minors are prepubescent female children and Keira was too young to verbalize any potential abuse. In fact, the evidence shows that the most recent abuse occurred in a common area of the family home while Keira was also at home and under Mitchell's care. Mitchell contends the age difference between the minors and Kimberly's protective nature mitigate the likelihood that Keira would be subjected to the same abuse. Kimberly's protective nature, however,

10

did not prevent Mitchell from abusing Kaitlyn even after the 2014 incident. Further, Kimberly denied Kaitlyn's allegations and had only begun to accept the possibility that Kaitlyn was truthful at the time of the contested hearing.

Keira was one and a half at the time of the jurisdiction and disposition trial, which is younger than the siblings found at risk in other cases. (See, e.g., *In re Rubisela E.* (2000) 85 Cal.App.4th 177, 197 [finding jurisdiction under section 300, subdivision (j) of 11-year-old daughter, whose 13-year-old sister was sexually abused by father]; *In re P.A.* (2006) 144 Cal.App.4th 1339, 1345-1346 [finding substantial risk to eight- and five-year-old sons of sexual abuse where father began sexually abusing daughter at age nine]; and *In re Maria R.* (2010) 185 Cal.App.4th 48, [finding substantial risk to younger sibling, 10-year-old daughter, where father sexually abused 12- and 14-year-old sisters].) This factor alone, however, does not negate the other evidence before the juvenile court. (See *I.J., supra*, 56 Cal.4th at p. 779 [" 'It is of course impossible to say what any particular sexual predator . . . is likely to do in the future in any particular instance. But in our view that very uncertainty makes it virtually incumbent upon the juvenile court to take jurisdiction over the siblings . . . .' "].) In sum, sufficient evidence supports the juvenile court's finding that Keira was a child at risk under section 300, subdivision (j).

DISPOSITION

The orders are affirmed.

McCONNELL, P. J.

WE CONCUR:

McINTYRE, J.

AARON, J.